William L. CAMPBELL, III,
Petitioner-Appellant,

v.

R.C. MARSHALL; the Attorney General of Ohio, Respondents-Appellees.

No. 84–3404.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 12, 1984.

Decided and Filed July 23, 1985.

J. Dean Carro, Appellate Review Office, Akron, Ohio, for petitioner-appellant.

William J. Steele (argued), Richard David Drake, Anthony Celebrezze, Columbus, Ohio, for respondents-appellees.

Before ENGEL and WELLFORD, Circuit Judges, and DeMASCIO,* District Judge.

ENGEL, Circuit Judge.

The principal issue in this habeas corpus appeal is whether the failure of the state to disclose potentially exculpatory evidence in its possession renders involuntary an otherwise voluntary, counseled plea of guilty. We assume without deciding that under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the state's conduct here in suppressing information favorable to the petitioner would have violated his Fourteenth Amendment due process rights if he had been convicted after a

* Honorable Robert E. DeMascio, United States District Judge for the Eastern District of Michi-

trial without the benefit of that information. Nonetheless, we conclude that under *Tollett v. Henderson,* 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973), and related Supreme Court decisions, the question presented in the instant case is not so much whether the particular conduct complained of violated *Brady,* but instead, whether under such circumstances petitioner's guilty plea was intelligently and voluntarily made with the advice of competent counsel. Put another way, did the prior withholding of the *Brady* information so taint the plea-taking as to render the guilty plea involuntary or unintelligent? We hold that petitioner's guilty plea here was valid and that his Fourteenth Amendment right to due process was not violated.

The relevant facts in this case are largely undisputed. While there was no trial, the evidence is fully laid out upon the record of the state and federal proceedings in which petitioner first pleaded guilty and then attempted to extricate himself from that plea.

On June 3, 1978, appellant William L. Campbell, III, used his key to enter the apartment of his former wife, Sheila Campbell. Campbell had been living in the apartment with Sheila and their children until about two weeks earlier. In his statement to the police, Campbell said that he went to the apartment to remove some of his personal property, including a .22 caliber automatic pistol and approximately 300 rounds of ammunition. He alleges that he was drunk and fell asleep at the kitchen table after placing the gun and ammunition on a divider between the table and the apartment's front door. Sometime after midnight Sheila Campbell, their children, and a male companion entered the apartment. Campbell told the police that he asked the man who he was, and the man replied, "Franket." Campbell further stated that several months earlier a friend had warned him that Ronald Franket had a gun and was "looking for him." Campbell

gan, sitting by designation.

claimed that although he saw no gun, he saw Franket reach into his pocket, and Campbell, therefore, shot Ronald Franket five times. He also shot Sheila Campbell three times. Both died.

Campbell turned himself in the following day and was subsequently indicted by a Columbiana County, Ohio grand jury on two counts of aggravated murder with specifications and one count of aggravated burglary. The specifications alleged that Campbell committed each murder as a part of the killing of two or more persons and that each was committed during the course of an aggravated burglary. Under Ohio law, Campbell could have received the death penalty if convicted of aggravated murder and at least one of the specifications. Ohio Rev.Code §§ 2929.03(B), 2929.-04(A)(5), (7). If convicted of aggravated murder but neither of the specifications, Campbell's maximum possible sentence was life imprisonment for each count. Ohio Rev.Code §§ 2929.02–.03. The aggravated burglary count carried a possible sentence of 4 to 25 years. Ohio Rev.Code §§ 2911.11, 2929.11.

As part of Campbell's plea bargain, the prosecutor moved both to strike the specifications from the aggravated murder portion of the indictment and to enter a nolle prosequi as to the aggravated burglary charge. In return, Campbell entered a plea of guilty to the two aggravated murder counts.

Before his plea hearing, Campbell was given a document entitled "Judicial Advice to Defendant." That document contained a discussion of each of the constitutional rights Campbell would waive by pleading guilty, the elements of the crime to which he intended to plead, and the maximum penalties he could receive. Campbell completed a written "Defendant's Response to Court" indicating that he had read and understood the information in the "Judicial Advice to Defendant." In his "Response" he also answered specific questions to establish that his guilty plea was knowing, intelligent, and voluntary. At the plea hearing the state court judge determined that Campbell had read and understood these documents. He also questioned Campbell as to his knowledge of the consequences of his guilty plea and discussed some of the rights Campbell was waiving. The court did not specifically inform Campbell in court that the plea would waive his right to be free from self-incrimination, his right of confrontation, and his right to compulsory process, although a discussion of the waiver of each of these rights was included in the "Judicial Advice to Defendant." When asked by the court why he shot Ronald Franket and Sheila Campbell, Campbell replied, "Because he was with my wife," and "Because she was with him." The court accepted Campbell's guilty plea and sentenced him to two consecutive life sentences.

Before Campbell decided to plead guilty, his counsel made a specific written request for discovery from the prosecution. He requested any evidence material to Campbell's guilt or punishment as well as a list of the tangible objects which the prosecution intended to use at trial. Campbell subsequently learned that the police had found a .25 caliber semi-automatic pistol on Franket's body and had taken that gun into their possession. The palm-sized weapon was found in the left, rear, hip pocket of Franket's pants. Although they were aware of the gun's existence and had the gun in their possession, the prosecution did not disclose the gun to Campbell or his counsel.

Campbell subsequently challenged his conviction in the Ohio courts and lost those challenges. He then brought a petition for a writ of habeas corpus in the United States District Court for the Northern District of Ohio. The district judge referred Campbell's habeas petition to a magistrate who recommended a denial of the writ. In a written opinion, the district judge adopted the magistrate's report and recommendation and denied Campbell's petition.

In his habeas petition and on appeal, Campbell argues that his plea bargain was invalid on two grounds. First, Campbell argues that the prosecution's failure to dis-

close the existence of Franket's handgun violated his Fourteenth Amendment due process rights as set forth in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The lower court held that the suppression of the evidence concerning the gun did not amount to a constitutional violation. Campbell contended that he pleaded guilty only because he had no believable self-defense claim and that he would have gone to a jury with that defense had he known of the gun. The district court rejected this argument, finding that

> To establish the defense of self-defense, an accused must demonstrate that at the time of the killing he reasonably believed that he was in danger of loss of life or serious bodily harm.... That petitioner later learned that the male victim was carrying a gun would not have any effect on the reasonableness of his belief that his life was in danger at the time of the shooting. Consequently, the suppression of this evidence did not materially prejudice petitioner's ability to assert self-defense.... The prosecution's failure to disclose the existence of the handgun did not amount to a violation of petitioner's constitutional rights.

*Campbell v. Marshall,* No. C 83–3004 Y, slip op. at 3–4 (N.D.Ohio March 26, 1984).

Second, Campbell states that because he was not specifically informed by the trial judge in open court that his guilty plea would waive his right to be free from self-incrimination, his right of confrontation, and his right to compulsory process, his Fourteenth Amendment due process rights were violated under the principles expressed by the Supreme Court in *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). The district court found that Campbell's constitutional rights as enunciated in *Boykin v. Alabama* were not violated, relying on the Sixth Circuit's decisions in *Roddy v. Black,* 516 F.2d 1380 (6th Cir.), *cert. denied,* 423 U.S. 917, 96 S.Ct. 226, 46 L.Ed.2d 147 (1975), and *Fontaine v. United States,* 526 F.2d 514 (6th Cir.1975), *cert. denied,* 424 U.S. 973, 96 S.Ct. 1476, 47 L.Ed.2d 743 (1976).

## I.

*Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963), stands for the proposition that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland* concerned the state's suppression of exculpatory evidence until after trial, thereby making that information unavailable to the defense for use at trial. Justice Douglas, the author of *Brady v. Maryland,* wrote that the *Brady* ruling was an extension of the Court's previous decision in *Mooney v. Holohan,* 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935). In *Mooney,* the Court had held that the state violated due process when it deliberately deceived the trial court and deprived a defendant of his liberty by presenting testimony it knew was perjured. 294 U.S. at 112, 55 S.Ct. at 341. As Justice Douglas stated in *Brady,*

> Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly. An inscription on the walls of the Department of Justice states the proposition candidly for the federal domain: "The United States wins its point whenever justice is done its citizens in the courts." A prosecution that withholds evidence on demand of an accused which, if made available, would tend to exculpate him or reduce the penalty helps shape a trial that bears heavily on the defendant. That casts the prosecutor in the role of an architect of a proceeding that does not comport with standards of justice, even though, as in the present case, his action is not "the result of guile," to use the words of the [Maryland] Court of Appeals. 226 Md., at 427, 174 A.2d, at 169.

*Brady v. Maryland,* 373 U.S. at 87–88, 83 S.Ct. at 1196–97 (footnote omitted).

We assume for the purposes of this opinion that under *Brady v. Maryland* if Campbell had gone to trial and been convicted without the suppressed evidence having come to light, a violation of his Fourteenth Amendment due process rights would have been established. Campbell's attorney requested disclosure of both tangible evidence the prosecution intended to introduce at trial and all evidence material to the accused. The government may be able to excuse its failure to disclose the presence of the gun in response to the tangible evidence request on the basis that it did not intend to introduce the pistol at trial. However, in our judgment, it cannot validly justify its failure to disclose that evidence on the basis that it was not material to the accused. The government had to be well aware from Campbell's statements that he claimed to have heard that Franket was carrying a gun and was out to get him, and that he saw Franket reach for his pocket. To the extent that Campbell might have presented a self-defense case to a jury, the presence of the gun in Franket's pocket certainly would have been relevant, at least to Campbell's credibility. That evidence ˏcould have corroborated his expressed concern that Franket was armed.

In *Jones v. Jago*, 575 F.2d 1164 (6th Cir.), *cert. denied*, 439 U.S. 883, 99 S.Ct. 223, 58 L.Ed.2d 196 (1978), (a case which also originated in the Northern District of Ohio) we held that a state prosecutor may not avoid his disclosure obligation under *Brady v. Maryland* and *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), merely by claiming that in his view the suppressed evidence was neutral and not exculpatory. Instead, we decided that where information has been specifically requested by the defense, the subjective evaluation of that information's evidentiary value is not for the prosecutor to make. This is especially true where "the request is timely and specific [and] the prosecutor had to be aware of all of the attendant circumstances and of the [potential] importance of the testimony." *Jones v. Jago*, 575 F.2d at

1168. In those circumstances the prosecutor should at least submit the disclosure problem to the trial judge for resolution. *Id.*

Here the prosecutor's decision not to disclose can be described, at best, as "cute"; at worst, it is reprehensible. In any case, we need go no further in evaluating the likelihood of success of the defense to conclude that this evidence was very probably material and might have tended to exculpate Campbell. This evidence was also important to Campbell's attorney, both because it was requested and because it certainly could have borne upon the defense counsel's negotiating power in arriving at a plea.

The question then becomes whether this non-disclosure renders involuntary Campbell's otherwise voluntary plea, given without knowledge of this evidence.

We believe it is fully established by *Tollett v. Henderson*, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973), and the Court's earlier decision in *Brady v. United States*,[1] 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) that "a guilty plea represents a break in the chain of events which has preceded it in the criminal process," *Tollett*, 411 U.S. at 267, 93 S.Ct. at 1608:

When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann* [*v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)].

A guilty plea, voluntarily and intelligently entered, may not be vacated because the defendant [may be able to] show that if counsel had pursued a certain factual inquiry such a pursuit would

---

**1.** *Brady v. United States* should not be confused    with *Brady v. Maryland,* discussed earlier.

have uncovered a possible constitutional infirmity in the proceedings.

*Id.*

In the so-called *Brady* Trilogy, *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); and *Parker v. North Carolina*, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970), the Supreme Court held that where a guilty plea is otherwise voluntarily and intelligently made with·the advice of competent counsel and where the factual basis for the plea fully establishes guilt, the plea is not rendered involuntary merely because the defendant may have been motivated by a statute or state conduct later found to be unconstitutional. These three decisions, all authored by Justice White, presented variations on a single theme: each concerned a post-conviction attack by a petitioner upon his earlier counseled plea of guilty, a plea he claimed was involuntary because it was induced in part by some impermissible cause amounting to a constitutional violation.

In *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), for example, the Supreme Court found the petitioner's guilty plea voluntary even though he claimed the plea had been induced by his fear of receiving the death penalty if he stood trial on kidnapping charges. The Court held the plea was voluntary even though the advice of Brady's counsel that he might be risking the death penalty by going to trial was later shown to have been overly pessimistic. Indeed, in *United States v. Jackson*, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968), the Supreme Court overturned the death penalty statute in question. Yet, Justice White concluded that the unconstitutionality of the death penalty provision did not invalidate Brady's plea:

> The fact that Brady did not anticipate *United States v. Jackson, supra,* does not impugn the truth or reliability of his plea. We find no requirement in the Constitution that a defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he is charged simply because it later develops that the State would have had a weaker case than the defendant had thought or that the maximum penalty then assumed applicable has been held inapplicable in subsequent judicial decisions.

*Brady v. United States*, 397 U.S. at 757, 90 S.Ct. at 1473.

*McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), the second case in the *Brady* Trilogy, consolidated three appeals from the Second Circuit. In each appeal the respondent asserted that his counseled plea of guilty to a felony under New York law was involuntary because it had been motivated by a prior coerced confession. The respondents contended that if their confessions were found to be involuntary, and hence inadmissible, their pleas must also be set aside. The Second Circuit agreed, ordering evidentiary hearings on the voluntariness of the confessions. As Justice White wrote,

> It was the Court of Appeals' view that a plea of guilty is an effective waiver of pretrial irregularities only if the plea is voluntary and that a plea is not voluntary if it is the consequence of an involuntary confession. That the petitioner was represented by counsel and denied the existence of coercion or promises when tendering his plea does not foreclose a hearing on his petition for habeas corpus alleging matters outside the state court record.

*McMann*, 397 U.S. at 764–65, 90 S.Ct. at 1445–46. The Supreme Court reversed, finding itself in "substantial disagreement with the Court of Appeals." *Id.* at 760, 90 S.Ct. at 1443. Speaking for a majority of the Court, Justice White observed:

> The issue on which we differ with the Court of Appeals arises in those situations involving the counseled defendant who allegedly would put the State to its proof if there was a substantial enough chance of acquittal, who would do so except for a prior confession that might be offered against him, and who because

of the confession decides to plead guilty to save himself the expense and agony of a trial and perhaps also to minimize the penalty that might be imposed. After conviction on such a plea, is a defendant entitled to a hearing, and to relief if his factual claims are accepted, when his petition for habeas corpus alleges that his confession was in fact coerced and that it motivated his plea? We think not if he alleges and proves no more than this.

*Id.* at 767–68, 90 S.Ct. at 1446–48.

Application of this rule in the three individual appeals consolidated in *McMann* is particularly illuminating. Respondent Dash, facing first-degree robbery charges carrying a maximum potential sentence of 60 years, pleaded guilty to robbery in the second degree and received an 8 to 12 year sentence. Dash later claimed that he had been "beaten, refused counsel, and threatened with false charges prior to his confession," but that his attorney nonetheless advised him to plead guilty because he "did not 'stand a chance due to the alleged confession signed' by him." *Id.* at 761–62, 90 S.Ct. at 1443–44.

The second respondent, Richardson, was originally indicted for murder in the first degree. He withdrew his initial plea of not guilty upon the advice of the two attorneys assigned to represent him and pleaded guilty to murder in the second degree. During the plea proceeding he admitted that he had struck the victim with a knife. After Richardson was sentenced to a term of 30 years to life, he sought habeas relief, claiming that his guilty plea was induced by a coerced confession. Richardson also claimed

that he was beaten into confessing the crime, that his assigned attorney conferred with him only 10 minutes prior to the day the plea of guilty was taken, that he advised his attorney that he did not want to plead guilty to something he did not do, and that his attorney advised him to plead guilty to avoid the electric chair, saying that "this was not the proper time

to bring up the confession" and that Richardson "could later explain by a writ of habeas corpus how my confession had been beaten out of me."

*Id.* at 762–63, 90 S.Ct. at 1444–45.

The third *McMann* respondent, Williams, was indicted for five felonies, including rape and robbery. He pleaded guilty to robbery in the second degree and was sentenced to 7½ to 15 years. In his habeas petition, he, too, asserted that his plea was the consequence of a coerced confession and was made without an understanding of the nature of the charge and the consequences of the plea. Williams alleged that while he was being interrogated, he was handcuffed to a desk, threatened with a pistol, and physically abused. He further asserted that "his attorney, in advising him to plead guilty, ignored his alibi defense and represented that his plea would be to a misdemeanor charge rather than to a felony charge." *Id.* at 763–64, 90 S.Ct. at 1444–45.

In each of these individual cases, the Supreme Court did not disturb the Second Circuit's decision to require evidentiary hearings on the other factual disputes as to the alleged involuntariness of the guilty pleas, but the Court nevertheless clearly held that "a defendant who alleges that he pleaded guilty because of a prior coerced confession is not, without more, entitled to a hearing on his petition for habeas corpus." *Id.* at 771, 90 S.Ct. at 1449.

Finally, in *Parker v. North Carolina,* 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970), the third decision in the *Brady* Trilogy, a black youth, who was 15 years old at the time of the alleged offense, had entered a plea of guilty to first degree burglary and received the mandatory sentence of life imprisonment. Under North Carolina law as then on the books, the youth would have risked the death penalty had he gone to trial on the charge. *Id.* at 792, 90 S.Ct. at 1460. Parker claimed that his guilty plea was the result of a coerced confession.[2] In

---

**2.** Parker further claimed that blacks were unconstitutionally excluded from the grand jury

which indicted him. However, the Court did not reach that issue because it was not pre-

its decision the Court noted that at least a month had passed between the alleged coercive interrogation and Parker's confession, that Parker had the advice of both counsel and parents before his plea, and that he had at the time of the plea-taking disavowed any threats, misrepresentations, promises or improper acts. *Id.* at 795–96, 90 S.Ct. at 1461–62. The Supreme Court then held that even assuming the confession had been coerced and, therefore, might have been held inadmissible at trial, "the guilty plea was Parker's free and voluntary act, the product of his own choice, just as he affirmed it was when the plea was entered in open court." *Id.* at 796, 90 S.Ct. at 1462. In addition, the Court found that the apparent miscalculation of Parker's counsel as to the admissibility of Parker's confession did not invalidate the guilty plea. As Justice White wrote,

> As we understand it, Parker's position necessarily implies that his decision to plead rested on the strength of the case against him: absent the confession, his chances of acquittal were good and he would have chosen to stand trial; but given the confession, the evidence was too strong and it was to his advantage to plead guilty and limit the possible penalty to life imprisonment. On this assumption, had Parker and his counsel thought the confession inadmissible, there would have been a plea of not guilty and a trial to a jury. But counsel apparently deemed the confession admissible and his advice to plead guilty was followed by his client. Parker now considers his confession involuntary and inadmissible. The import of this claim is that he suffered from bad advice and that had he been correctly counseled he would have gone to trial rather than enter a guilty plea. He suggests that he is entitled to plead again, a suggestion that we reject.
>
> For the reasons set out in *McMann v. Richardson*, [397 U.S. at] 759 [90 S.Ct. at 1441], even if Parker's counsel was wrong in his assessment of Parker's con-

fession, it does not follow that his error was sufficient to render the plea unintelligent and entitle Parker to disavow his admission in open court that he committed the offense with which he was charged. Based on the facts of record relating to Parker's confession and guilty plea, which we have previously detailed, we think the advice he received was well within the range of competence required of attorneys representing defendants in criminal cases. Parker's plea of guilty was an intelligent plea not open to attack on the grounds that counsel misjudged the admissibility of Parker's confession.

*Parker,* 397 U.S. at 796–98, 90 S.Ct. at 1462–63 (footnotes omitted).

We believe that in *Tollett* and the *Brady* Trilogy the Supreme Court did not intend to insulate all misconduct of constitutional proportions from judicial scrutiny solely because that misconduct was followed by a plea which otherwise passes constitutional muster as knowing and intelligent. However, we believe those authorities provide a fully adequate basis for affirming the district court's denial of habeas relief here.

First, as in those cases, the plea-taking here included the establishment of a factual basis for Campbell's plea and complied with *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) (as discussed *post*). The record of the plea-taking in this case is as fully convincing in showing the plea's voluntary and intelligent nature as the accounts of the pleas reported in the cited Supreme Court decisions. We believe that the belated discovery of the information concerning Franket's gun does not in any way detract from the credible factual basis for Campbell's plea admitted in his own statements at the plea proceeding. Those statements fully established his factual guilt: according to Campbell, he shot and killed Franket "Because he was with [his] wife," and he shot and killed his former wife "Because she was with him." As in *Tollett* and *Brady v. United States,*

---

served by timely objection under the state's rules of practice. Those rules, thus, provided an adequate and independent state ground pre-

cluding habeas review. *Parker,* 397 U.S. at 798–99, 90 S.Ct. at 1462–63.

these admissions of factual guilt in open court are entitled to great weight.

Moreover, we perceive in the state's misconduct here no likelihood of greater prejudice to the defendant's ability to plead knowingly and voluntarily than any prejudice brought about by the misconduct that was the subject of the *Brady* Trilogy. While the prosecution's non-disclosure of the pistol was certainly objectionable, it was no more reprehensible than the beatings alleged in *McMann,* for example.

In addition, as in *Tollett* and the *Brady* Trilogy, Campbell's plea was made with the advice of competent counsel. Indeed, the record shows that the conduct and advice of Campbell's defense counsel was even less blameworthy than that of counsel in *Parker* and *McMann.* There the attorneys' advice that the coercive confessions might be used against their clients and that this use would guarantee certain convictions was very possibly incorrect. The record does not show that Campbell's counsel was guilty of any such probable misadvice.

Finally, the certainty of a constitutional violation is much less clearly established here than in the *Brady* Trilogy. We first note that there is no authority within our knowledge holding that suppression of *Brady* material *prior to trial* amounts to a deprivation of due process. Here error is claimed in non-disclosure of the evidence concerning the pistol before trial. Moreover, it is unclear what prejudicial effect this non-disclosure would have had at a trial; that is, even if this evidence had been disclosed and introduced at a trial, the weight a jury would have given it is subject to some question. Construed in the light most favorable to Campbell, disclosure of the fact of the gun's presence in Franket's

pocket when he was killed could have added some credibility to Campbell's statement that he had heard and believed that Franket was armed and out to get him. Yet, we must remember that Campbell had armed himself and that he remained in his former wife's apartment long after any need to do so had passed. It has also been established that Campbell did not in fact see Franket's weapon and that he put three bullets into his former wife, against whom, he concedes, no self-defense claim could be asserted. His conduct, therefore, strongly negated any self-defense theory and strongly supported the inference that he remained on the premises specifically to carry out a preconceived design to kill. Thus, while we have assumed the existence of a *Brady* violation for the purposes of this opinion, it is uncertain whether Campbell could have shown the prejudice necessary to prove such a violation.

Our decision is also supported by the only reported federal court of appeals case which is directly on point and discusses the relevant issues.[3] In *Fambo v. Smith,* 433 F.Supp. 590 (W.D.N.Y.), *aff'd,* 565 F.2d 233 (2d Cir.1977), Fambo petitioned for a writ of habeas corpus, claiming that his state court conviction was unconstitutional because the prosecution had not disclosed exculpatory facts before the court accepted his guilty plea. The indictment had charged Fambo with two violations of N.Y. Penal Law § 265.04, a class B felony prohibiting possession of an explosive substance with the intent to use it against another person or that person's property. The indictment alleged that Fambo had possessed a tube of dynamite on or about November 29, 1970 and December 1, 1970. Fambo pleaded guilty to one count of a violation of N.Y.Penal Law § 265.02(2), a

**3.** A district court case, *United States v. Wolczik,* 480 F.Supp. 1205 (W.D.Pa.1979), is not directly on point because it is not a habeas corpus case. However, the issues there are closely related and the opinion is well-reasoned. A third case is clearly on point but does not discuss the relevant issues. In *Clements v. Coiner,* 299 F.Supp. 752 (S.D.W.Va.1969), a district court granted a habeas corpus petition filed by a state prisoner who had pleaded guilty to murder.

The court found that the defendant's constitutional rights had been violated under the doctrine of *Brady v. Maryland* because two documents suggesting defendant's impaired mental capacity were not disclosed to defendant's counsel before he pleaded. The *Clements* opinion pre-dates the Supreme Court cases dealing with guilty pleas and waiver and contains no discussion of the propriety of applying *Brady v. Maryland* in a guilty plea context.

class D felony concerning possession of an explosive or incendiary device. 433 F.Supp. at 591.

At a subsequent, unrelated trial, Fambo learned that a deputy sheriff had made the tube of dynamite in question harmless on November 29, 1970, by removing the tube's explosive contents and repacking it with sawdust. The tube was then returned to where it had been hidden. Therefore, on December 1, 1970, when Fambo apparently retrieved the tube from its hiding place, he was not in possession of an explosive substance even though he believed he was. The prosecution did not inform Fambo or his counsel that the tube contained only sawdust on December 1. Fambo argued that without knowledge of this exculpatory evidence, his guilty plea was not voluntary, intelligent, and knowing. *Id.* at 592.

It is interesting to note that in *Fambo,* the defendant may not have been technically guilty of the particular charge to which he pleaded as a part of his plea bargain. The district court observed that Fambo could not have been convicted of possession of dynamite on December 1 because the police had previously removed the explosive from the tube in question. Nevertheless, the court observed that under all accounts, Fambo was guilty of possession on November 29 before the dynamite was removed. *Id.* at 599. Further, according to the district court, he could still have been convicted of *attempting* to possess an explosive on December 1; under New York law proof of that offense would constitute a class C felony. *Id.*

After a lengthy discussion of plea bargaining practices, the trial judge in *Fambo* finally concluded that

> The record before me indicates that there was thus sufficient mutuality of advantage to support this bargain as being reasonable and fair, after the fact, even though the Assistant District Attorney's failure to disclose potentially exculpatory evidence was an omission of constitutional proportions and is subject to censure as a bargaining tactic. In retrospect, petitioner's decision to plead guilty

to a D felony, with assurances that a maximum term of five years' imprisonment would be imposed, was still a voluntary and intelligent, if not properly informed, choice among the alternative courses of action open to him at the time the plea was entered. *See North Carolina v. Alford, supra,* 400 U.S. [25] at 31, 91 S.Ct. 160 [at 164, 27 L.Ed.2d 162 (1970)].

433 F.Supp. at 600.

The Second Circuit affirmed in a brief per curiam opinion. *Fambo v. Smith,* 565 F.2d 233 (2d Cir.1977). Noting that the indictment and dates therein were couched in "on or about" language, the court concluded that the difference in the two dates in the two counts alleged in the indictment would not have been a fatal imperfection in the proof at the trial; the court found that the imperfection "could not possibly have made any difference in the treatment of the defendant." *Id.* at 235. As to the misconduct of the government in failing to apprise Fambo or his attorney of the substitution of the sawdust, the Second Circuit concluded:

> While we agree with Judge Curtin's conclusion that it was reprehensible for the district attorney not to disclose the substitution of sawdust for dynamite, we cannot see, in view of Fambo's undisputed possession [of] dynamite a mere two days prior to the "on or about" date specified in the indictment, how any dereliction of duty on the part of the local law enforcement officers could possibly have so prejudiced the petitioner as to render his conviction unconstitutional.

*Id.*

We find ourselves examining the government's misconduct here in the manner of the Supreme Court in the *Brady* Trilogy and *Tollett* and the Second Circuit in *Fambo.* While each of those cases certainly contained instances of state conduct which was at least reprehensible, if not clearly unconstitutional, each court still evaluated the validity of the challenged plea in light of all the attendant circumstances. Here, as in those cases, the record shows the

**324**

assistance of counsel, a plea-taking procedure compliant with *Boykin v. Alabama*, and a factual basis for the plea. These circumstances must go a long way toward protecting the plea-taking event from later collateral attack.

Finally, it is clear that the undisclosed information's greatest value to Campbell and his counsel was as an aid in their evaluation of the possibilities of success on trial and that the suppressed information was unavailable for that purpose. Yet, a plea decision is not made with any perfect knowledge of the results were a trial to be held. Both Campbell and his attorney had to know that if they had proceeded to trial, any number of events might have intervened to affect the final outcome. Favorable or unfavorable rulings on the evidence might have been rendered; witnesses favorable to the defense or to the prosecution may have died awaiting trial or have become otherwise unavailable. New witnesses might have come forward; known witnesses might have recanted. The evidence of the prosecution may have taken entirely unpredicted turns to the favor or prejudice of the government's case. These are trial's unknown risks and dangers which the plea bargaining process seeks to remove. By entering the plea Campbell was foregoing the possibility that any such events would have resulted in a not guilty verdict. Certainly the knowledge of the gun's presence was important to Campbell and his attorney, but we cannot say it would have been controlling in the decision whether to plead. Especially given Campbell's own statements at the time of the plea, the constitutional wrong, if such it was, did not compromise either the truth or the voluntary and knowing nature of the plea.

We hold that Campbell's Fourteenth Amendment due process rights were not violated.

**II.**

Campbell's claim that *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23

L.Ed.2d 274 (1969), was violated by the plea-taking procedure involved here is without merit.

Contrary to the assertion of appellant, the plea-taking procedures employed fully complied with the requirements of *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), as interpreted by our decisions in *Roddy v. Black*, 516 F.2d 1380 (6th Cir.), *cert. denied*, 423 U.S. 917, 96 S.Ct. 226, 46 L.Ed.2d 147 (1975), and *Fontaine v. United States*, 526 F.2d 514 (6th Cir.), *cert. denied*, 424 U.S. 973, 96 S.Ct. 1476, 47 L.Ed.2d 743 (1976). We decline the petitioner's invitation to reexamine those decisions, and in words of *Armstrong v. Egeler*, 563 F.2d 796 (6th Cir. 1977), we "are unwilling to hold, as a constitutional requirement applicable in habeas cases to state prosecutions, that a guilty plea requires any precise litany for its accomplishment." *Id.* at 799 (footnote omitted).

AFFIRMED.