J-S39033-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| KENYETTA WILKERSEN | : | |
| | : | |
| Appellant | : | No. 511 EDA 2025 |

Appeal from the PCRA Order Entered January 30, 2025
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008293-2013

BEFORE:  STABILE, J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                    **FILED APRIL 1, 2026**

Kenyetta Wilkersen ("Wilkersen")[1] appeals from the order dismissing the second petition she filed pursuant to the Post Conviction Relief Act ("PCRA").[2]  Wilkersen seeks relief from her negotiated guilty plea to third-degree murder and possessing an instrument of crime and claims that the Commonwealth violated **Brady v. Maryland**, 373 U.S. 83 (1963).  Because the PCRA court properly concluded Wilkersen's claims related to the misconduct of a detective were untimely, and her claims based on the Commonwealth's recent disclosure of a note in a police file were timely but meritless, we affirm.

_____

[1] Wilkersen also spells her last name "Wilkerson."  We have retained the spelling "Wilkersen" for the purpose of consistency with the Court of Common Pleas docket.

[2] **See** 42 Pa.C.S.A. §§ 9541-9546.

We summarize the background to this appeal as follows. In April 2014, Wilkersen admitted to the following facts:

> [Wilkersen] and the victim[, Kendra Burton,] were lifelong friends. On April 10th, 2013, . . . the victim was in her home . . .. At that time[, Wilkersen] knocked on her door with another lifelong friend, the witness in this case[,] whose name is Leona Taylor. [Wilkersen's] intentions were to ask the victim for a cigarette.
>
> . . . [A] physical altercation began. [Wilkersen] took out a knife that she had been carrying and stabbed the victim multiple times in the torso, back, arms, and face.
>
> [Wilkersen] and her friend . . . then left the victim there in the apartment and left the scene. The victim's body was discovered the next morning by a neighbor . . ..

*See* N.T., 4/21/14, at 15-16. Police initially interviewed Wilkersen on the same day as the murder, and she denied any involvement in the killing or being at the victim's home; however, two weeks later, Wilkersen gave a videotaped statement to detectives admitting she stabbed the victim and afterwards threw the knife into a sewer. ***See id***. at 16-17; ***see also*** Exhibit C-1 & Transcript.[3] Wilkersen told the detective that she was high when the fight began, and she was apologetic for killing the victim. ***See*** N.T., 4/21/14, at 17.

Following a thorough on-the-record colloquy, which included the above-stated factual basis, the trial court accepted Wilkersen's guilty plea to third-

---

[3] At the guilty plea hearing, the Commonwealth identified a copy of the recording of Wilkersen's confession as Exhibit C-1. ***See*** N.T., 4/21/24, at 17. The trial court directed that a transcript of the videotaped confession be included in the record. ***See id***. at 29-30. The certified record in this appeal includes a transcript of the videotaped confession, but not the recording itself.

degree murder and possessing an instrument of crime.  **See** N.T., 4/21/14, at 5-20.  Wilkersen acknowledged that as part of the plea bargain, the Commonwealth agreed to recommend an aggregate sentence of twenty-two-and-one-half to forty-five years of imprisonment and not to proceed on first-degree murder, which would have carried a mandatory sentence of life without parole were Wilkersen convicted of that offense at trial.  **See id**. at 18.  At the conclusion of the April 2014 hearing, the trial court imposed the agreed-upon aggregate sentence.  Wilkersen did not file post-sentence motions or a direct appeal.

Wilkersen unsuccessfully sought post-conviction relief on two previous occasions.  In her first attempt at post-conviction relief in 2020, Wilkersen filed a *pro se* motion to compel production of DNA and biological evidence. The trial court denied that motion, and this Court affirmed.  **See Commonwealth v. Wilkerson**, 248 A.3d 473, 2021 WL 82298 (Pa. Super. 2021) (non-precedential memorandum).  In 2021, Wilkersen filed a first PCRA petition.  The PCRA court appointed counsel, who filed a petition to withdraw and a **Turner**/**Finley** letter.[4]  The PCRA court permitted counsel to withdraw and dismissed that petition.  This Court affirmed.  **See Commonwealth v.**

---

[4]  **See Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).  As stated in the **Turner**/**Finley** letter, Wilkersen intended to claim that she did not stab the victim, her plea was unknowing, unintelligent, and involuntary, DNA evidence would prove her innocence, her confession was coerced, and her confession was false.  **See Turner**/**Finley** Letter, 6/24/21, at 6-7.  The PCRA court granted counsel leave to withdraw and dismissed Wilkersen's first petition for raising meritless and/or untimely claims.

*Wilkerson*, 285 A.3d 905, 2022 WL 4076045 (Pa. Super. 2022) (non-precedential memorandum).

In 2022, Wilkersen filed a federal habeas action, during which the Commonwealth discovered in the police homicide investigation file the following handwritten note ("the note") indicating police received information about an alternate suspect:



*See* Amended PCRA Petition, 8/13/24, at Exhibit A (hereinafter, "the note"); *see also id*. at 5; Commonwealth's Answer, 11/4/24, at 5.[5]  The Commonwealth disclosed the note to Wilkersen in August 2023.

---

[5] We have modified the original image of the note for readability and to redact extraneous personal information such as a phone number underneath the notation "Yetta's boyfriend" and a Post-it note with the name and phone number of the victim's father.

*(Footnote Continued Next Page)*

In January 2024, Wilkersen filed the *pro se* PCRA petition which led to this appeal.[6]  The PCRA court appointed counsel, who filed an amended petition claiming **Brady** violations based on the Commonwealth's failures to disclose the note indicating that Tanya said Corey or "Champ" stabbed the victim, as well as an internal affairs report about one of the detectives to whom Wilkersen confessed.  **See** Amended PCRA Petition, 8/13/24, at 5, 38.[7]  The Commonwealth filed an answer asserting (1) Wilkersen did not timely seek relief based on the internal affairs report because the Commonwealth, in 2021, previously disclosed the detective's misconduct history, and (2) Wilkersen's claims based on the note were timely but lacked merit because the information in the note did not prejudice her guilty plea.  **See** Commonwealth's Answer, 11/4/24, at 8-10.  Wilkersen responded to the

_____

The record indicates that Wilkersen went by a nickname similar to "Yetta," and Wilkerson's friend, Leona Taylor, went by the nickname "Peachy."  **See** Exhibit C-1 & Transcript, at 5 (indicating Wilkersen's nickname was "Yetti"). Nothing in the record indicates who "Tanya" or "Fred" were; nor was there any evidence about the author of the note, the date of its writing, or when the author received the information that Tanya said Corey or "Champ" stabbed the victim, "Kendra."

[6] The federal court stayed Wilkersen's habeas action pending this proceeding.

[7]  More specifically, Wilkersen alleged that Detective Edward Tolliver ("Detective Tolliver") interrogated, or attempted to interrogate, her on three occasions and coerced her confession to the killing during the third interrogation.  **See** Amended PCRA Petition, 8/13/24, at 39.  Wilkersen asserted that the internal affairs report indicated that the detective assaulted an individual when responding to a domestic disturbance call.  **See id**. at 38. Wilkersen did not attach a copy of the internal affairs report to her amended petition, and she did not specify when she learned about the detective's misconduct.

Commonwealth's answer but did not dispute the Commonwealth's assertion it disclosed the detective's misconduct history more than one year before she commenced the instant PCRA proceeding. **See** Wilkersen's Response to the Commonwealth's Answer, 11/12/24, at 2-7.

The PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss the amended petition and advised Wilkersen that her claims based on the internal affairs report were untimely, and her claims based on the note, while timely, lacked merit because the undisclosed note was not material. **See** Rule 907 Notice, 12/13/24, at 1-2. Wilkersen responded to the court's Rule 907 notice and challenged the PCRA court's materiality analysis of the note. Wilkersen's Response to the Rule 907 Notice, 12/19/24, at 2-5. On January 30, 2025, the PCRA court dismissed Wilkersen's petition. Wilkersen timely appealed.[8]

Wilkersen raises the following issues for our review:

> I. Whether the Commonwealth withheld an Internal Affairs report indicating that the detective who conducted the interrogations and

---

[8] The PCRA court ordered a Pa.R.A.P. 1925(b) statement, but Wilkersen's counsel did not timely file one. After the court issued a Rule 1925(a) opinion highlighting this omission, Wilkersen's counsel filed a Rule 1925(b) statement *nunc pro tunc*. The PCRA court filed a supplemental opinion addressing the issues raised in Wilkerson's Rule 1925(b) statement.

Because counsel's filing of a late Rule 1925(b) statement constitutes *per se* ineffectiveness, we decline to find waiver for counsel's noncompliance with the PCRA court's order for a Rule 1925(b) statement. **See Commonwealth v. Presley**, 193 A.3d 436, 441 (Pa. Super. 2018). Moreover, because the PCRA court filed an opinion addressing the issues raised in the late Rule 1925(b) statement, there is no need for a remand. **See id**.

obtained [Wilkersen's] alleged confession had a documented history of physical assault while on duty?

II. Whether the Commonwealth violated **Brady** and prejudiced [Wilkersen] by suppressing an exculpatory note during plea negotiations that identified an alternative suspect?

Wilkersen's Brief at ix (reordered).

Our standard of review of an order dismissing a PCRA petition is well settled:

Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. We view the record in the light most favorable to the prevailing party in the PCRA court. We are bound by any credibility determinations made by the PCRA court where they are supported by the record. However, we review the PCRA court's legal conclusions *de novo*.

**Commonwealth v. Staton**, 184 A.3d 949, 954 (Pa. 2018) (internal citations and quotation marks omitted). The PCRA petitioner "has the burden to persuade this Court that the PCRA court erred and that such error requires relief." **Commonwealth v. Wholaver**, 177 A.3d 136, 144-45 (Pa. 2018).

We must initially determine whether the PCRA court had jurisdiction to adjudicate the claims raised in Wilkersen's petition. Under the PCRA, any petition "including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final[.]" 42 Pa.C.S.A. § 9545(b)(1). The PCRA's timeliness requirements are jurisdictional in nature, and a court may not address the merits of the issues raised if the PCRA petition was not timely filed. **See Commonwealth v. Albrecht**, 994 A.2d 1091, 1093 (Pa. 2010). Pennsylvania courts may nevertheless consider a facially untimely

- 7 -

issue if the petitioner can plead and prove one of three exceptions set forth in section 9545(b)(1)(i)-(iii).

In the present case, Wilkersen's *pro se* 2024 PCRA petition was facially untimely.[9] In her amended PCRA petition, Wilkersen alleged timeliness exceptions based on: (1) the Commonwealth's failure to disclose an internal affairs report concerning a detective's prior misconduct in a different case and (2) the Commonwealth's disclosure of the note. **See** Amended PCRA Petition, 8/13/24, at 5-8, 10-11, 38.

To establish the governmental interference exception, a petitioner must plead and prove: (1) the failure to previously raise the claim was the result of interference by government officials, and (2) the petitioner could not have obtained the information earlier with the exercise of due diligence. **See Commonwealth v. Kennedy**, 266 A.3d 1128, 1135 (Pa. Super. 2021). Section 9545(b)(1)(ii) also provides an exception to the jurisdictional time-bar if "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence[.]" 42 Pa.C.S.A. § 9545(b)(1)(ii). Due diligence "demands that the petitioner take reasonable steps to protect his own interests. A petitioner must explain why he could not have learned the new fact(s) earlier with the

_____

[9] Wilkersen's conviction became final on May 21, 2014, when Wilkersen did not file post-sentence motion or a direct appeal. **See** 42 Pa.C.S.A. § 9545(b)(1), (3). Therefore, she had until May 21, 2015, to file a facially timely PCRA petition. **See** 42 Pa.C.S.A. § 9545(b)(1); **Wilkerson**, 2022 WL 4076045, at *4.

exercise of due diligence. This rule is strictly enforced." ***Commonwealth v. Medina***, 92 A.3d 1210, 1216 (Pa. Super. 2014) (internal quotations and citations omitted). Any PCRA petition invoking an exception under section 9545(b)(1) "shall be filed within one year of the date the claim could have been presented." 42 Pa.C.S.A. § 9545(b)(2); ***Kennedy***, 266 A.3d at 1133 n.9.

With respect to the internal affairs report, Wilkersen does not expressly contest the PCRA court's determination that she did not timely file a PCRA petition presenting her claims based on the misconduct of one of the detectives who took her videotaped confession. Nevertheless, she insists the Commonwealth "failed to disclose a misconduct report in which the . . . Internal Affairs report sustained a finding that Det[ective] Tolliver . . . had previously assaulted an individual after responding to a domestic disturbance call" and this claim is "directly relevant to the ***Brady*** claim" concerning the note. Wilkersen's Brief at 33-34.

The PCRA court dismissed Wilkersen's claims based on the internal affairs report as untimely and determined that the Commonwealth had disclosed information about the detective's misconduct history to Wilkersen in 2021. ***See*** PCRA Court Opinion, 4/29/25, at 8-9. Citing 42 Pa.C.S.A. § 9545(b)(2), the court concluded that Wilkersen's claims based on the detective's misconduct were time barred because she filed the *pro se* PCRA petition presenting such claims more than two years later, in 2024. ***See id***. at 8-9.

The record supports the PCRA court's findings, and we discern no error in the court's conclusions of law. To reiterate, the PCRA requires a petitioner to plead and prove a timeliness exception under section 9545(b)(1)(i)-(iii) and file a petition invoking an exception "within one year of the date the claim could have been presented." 42 Pa.C.S.A. § 9545(b)(2). In the present case, Wilkersen did not contest the Commonwealth's assertions that it disclosed information about the detective's misconduct history in 2021. *See* Answer, 11/4/24, at 10; *See* Response, 11/12/24, at 2-7. Thus, Wilkersen had until 2022 to present claims based the detective's misconduct, *see* 42 Pa.C.S.A. § 9545(b)(2). Wilkersen has not explained why she waited until January 2024 to present her claims based on the detective's history of misconduct, nor has she established that her claims based on an internal affairs report fell within a PCRA timeliness exception. Accordingly, we affirm the PCRA court's dismissal of Wilkersen's claims based on the internal affairs report as untimely. *See Staton*, 184 A.3d at 954; *Commonwealth v. Jones*, 344 A.3d 1102, 2025 WL 1938521, at *3 (Pa. Super. 2025) (non-precedential memorandum) (concluding that Jones did not plead and prove a PCRA timeliness exception when he did not allege when he first learned of a detective's alleged misconduct, did not establish reasonable efforts to ascertain the relevant facts, and did not assert how the Commonwealth prevented him from presenting his claims).

As to Wilkersen's claims based on the note, the PCRA court determined Wilkersen met the newly discovered fact exception because she could not have

discovered the note until the Commonwealth disclosed it. **See** PCRA Court Opinion, 4/29/25, at 6. The record supports the PCRA court's determination in that (1) Wilkersen alleged that she could not have discovered the note, (2) the Commonwealth averred that it only discovered the note in the police investigation file when preparing a response to Wilkersen's federal habeas action, and (3) the Commonwealth conceded it had not disclosed the note to Wilkersen until August 2023. **See** Amended PCRA Petition, 8/13/24, at 2-6; Commonwealth's Answer, 11/4/24, at 5. Under the circumstances of this case, we will not disturb the court's conclusion that Wilkersen stated a PCRA timeliness exception based on the disclosure of the note and timely presented her claims in the instant proceeding commenced in January 2024. **See Staton**, 184 A.3d at 954; **accord Commonwealth v. Jenkins**, 326 A.3d 455, 2024 WL 3914522, at *1 (Pa. Super. 2024) (non-precedential memorandum) (affirming a PCRA court's determination that materials in the sole custody of the police department constituted newly discovered facts for the purpose of section 9545(b)(1)(ii)). Therefore, we proceed to review the PCRA court's conclusion that Wilkersen's **Brady** claims based on the note were meritless.

A **Brady** claim presents a question of law, and an appellate court's standard of review is *de novo,* and the scope of review is plenary. **See Commonwealth v. Bagnall**, 235 A.3d 1075, 1084 (Pa. 2020). When reviewing the PCRA court's order dismissing Wilkersen's **Brady** claim on the merits, we are mindful of the following general principles:

> In ***Brady***, the United States Supreme Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. The Supreme Court subsequently held that the duty to disclose such evidence is applicable even if there has been no request by the accused, and that the duty may encompass impeachment evidence as well as directly exculpatory evidence. Furthermore, the prosecution's ***Brady*** obligation extends to exculpatory evidence in the files of police agencies of the same government bringing the prosecution.

> ***Commonwealth v. Lambert***, [ ] 884 A.2d 848, 853-54 ([Pa.] 2005) (internal citations and quotations omitted). The prosecution's duty under ***Brady*** is limited as "the Constitution is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense." ***Kyles***[***v. Whitley***, 514 U.S. 419, 436-37 (1995)] . . .. "Thus, there are three necessary components that demonstrate a violation of the ***Brady*** strictures: the evidence was favorable to the accused, either because it is exculpatory or because it impeaches; the evidence was suppressed by the prosecution, either willfully or inadvertently; and prejudice ensued." ***Lambert***, 884 A.2d at 854 . . ..

***Commonwealth v. Conforti***, 303 A.3d 715, 725-26 (Pa. 2023).

> Prejudice, for the purpose of ***Brady***,

> occurs when a defendant shows a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In other words, the undisclosed evidence must be material to guilt or punishment.

***Id***. at 730 (internal citations and quotation marks omitted). "Materiality" for

the purpose of ***Brady*** is analogous to prejudice for the purpose of an

ineffective assistance of counsel claim, in that "a grant of relief depends upon

finding a reasonable probability that the result of the proceeding would have

been different." ***Commonwealth v. Lesko***, 15 A.3d 345, 417 (Pa. 2011) (internal citations omitted).

In the context of a post-sentence challenge to the validity of a guilty plea, this Court adheres to a "manifest injustice" standard. ***See Commonwealth v. Felix***, 303 A.3d 816, 820 (Pa. Super. 2023) (noting that a defendant shows that a plea rises to the level of manifest injustice when it was entered into involuntarily, unknowingly, or unintelligently). Moreover,

> [o]nce a defendant has entered a plea of guilty, it is presumed that [s]he was aware of what [s]he was doing, and the burden of proving involuntariness is upon h[er]. In determining whether a guilty plea was entered knowingly and voluntarily, a court is free to consider the totality of the circumstances surrounding the plea. Furthermore, nothing in the rule precludes the supplementation of the oral colloquy by a written colloquy that is read, completed, and signed by the defendant and made a part of the plea proceedings.

***Id***. (internal citation omitted). Given the similarity between prejudice for the purposes of ***Brady*** and an ineffective assistance of plea counsel claim, ***see Lesko***, 15 A.3d at 417, it bears noting that "prejudice may be established by demonstrating a reasonable probability that [a petitioner] would have opted to go to trial rather than plead guilty" if she had been aware of information, such as, being given "legally sound advice." ***Commonwealth v. Barndt***, 74 A.3d 185, 199-200 (Pa. Super. 2013) (internal citation omitted). "[T]he reasonable probability standard in this context is not especially stringent, but requires only a probability sufficient to undermine confidence in the outcome." ***Id***. (internal citations omitted).

Wilkersen's lengthy and scholarly arguments in this appeal focus upon the PCRA court's determination that the note was not material, *i.e.*, that Wilkersen did not establish a reasonable probability that the results of the proceeding would have been different. Wilkersen emphasizes that the notation that Corey or "Champ" stabbed the victim was directly exculpatory and, therefore, favorable to the defense. ***See*** Wilkersen's Brief at 9-15. She further contends that the note was material because it undermined confidence in the outcome of the plea proceeding. ***See id***. at 10. On this point, Wilkersen asserts that materiality, in the context of a "post-plea" ***Brady*** claim, is a reasonable probability that she would not have accepted the Commonwealth's plea offer and would have proceeded to trial. ***See id***. at 10, 12-17, 23, 26, 28.[10] She argues that the note was material in the present case because the

_____

[10] Wilkersen devotes a substantial portion of her brief to arguing that a ***Brady*** claim should survive a guilty plea in order to ensure fair, transparent, reliable, and trustworthy plea negotiations. ***See*** Wilkersen's Brief at 12, 15, 18-19, 20-22. Our research has yet to uncover a Pennsylvania Supreme Court decision opining on the viability or contours of a ***Brady*** claim in a post-plea setting, and we have found only one reported decision by this Court discussing a post-plea ***Brady*** claim. ***See Commonwealth v. Kephart***, 594 A.2d 358, 360 (Pa. Super. 1991). We note that ***Kephart*** pre-dates ***United States v. Ruiz***, 536 U.S. 622 (2002), a United States Supreme Court decision, which, as noted by Wilkersen, curtailed the prosecution's duty to disclose material impeachment evidence during plea negotiations. The non-precedential decisions of this Court, capable of citation under Pa.R.A.P. 126(b), have reached mixed conclusions on post-plea ***Brady*** claims. ***Compare Commonwealth v. Wayda***, 256 A.3d 48 (Pa. Super. 2021) (non-precedential memorandum) (discussing the merits of a post-plea Brady claims) with ***Commonwealth v. Early***, 240 A.3d 160 (Pa. Super. 2020) (non-precedential memorandum) (noting that a ***Brady*** claim was waived by the entry of a guilty plea).
*(Footnote Continued Next Page)*

non-disclosure of the note (1) impacted her ability to formulate a defense strategy and prepare for trial, (2) compromised her bargaining position during plea negotiations, (3) caused her to accept the Commonwealth's plea offer unknowingly, unintelligently, and involuntarily. *See id*. at 7, 11-14. Put differently, she asserts that if the Commonwealth had disclosed the note during plea negotiations, she could have fashioned more effective defense strategies by shifting blame to an alternate suspect and questioning the integrity of the police investigation; this, in turn, would have altered the parties' assessments of the risks and benefits of going to trial, influenced the sentencing recommendations offered and accepted during plea negotiations, and altered her decision to accept the Commonwealth's plea offer of twenty to forty years of imprisonment for third-degree murder. *See id*. at 11-15, 17, 24, 25, 28. She emphasizes that when reviewing her issue, the standard for considering materiality is a "low" one, because if a higher standard were applied, the Commonwealth "would likely err" on the side of withholding exculpatory evidence. *Id*. at 10.

Wilkersen further suggests the PCRA court erred in its materiality analysis to the extent the court hypothesized about a likely outcome at a trial, considered the admissibility of the note at trial, or relied on her confession and guilty plea. *See id*. at 22-28. Wilkersen contends such factors are

---

This Court need not expressly determine whether Pennsylvania recognizes a post-plea *Brady* claim because even if Pennsylvania does so, Wilkersen has not stated a basis for relief under any applicable standard.

"immaterial" to the issue of whether she stated a reasonable probability that she would not have accepted the Commonwealth's plea offer and instead gone to trial. *See id*. at 24, 26, 28.

The PCRA court denied relief on Wilkersen's *Brady* claims based on the note because, it determined, the note was not material and Wilkersen could not establish prejudice. *See* PCRA Court Opinion, 4/29/25, at 7-8. Focusing on the notation that "Tanya said . . . Peachy left[,] . . . Yetta was fighting [the victim, and] . . . Corey or 'Champ' stabbed the victim," the court observed there was no record evidence establishing who "Tanya" was or how she got information that Corey or Champ stabbed the victim. *See id*. at 7. The court determined the note was itself "inadmissible hearsay," and Wilkersen did not establish she could have discovered favorable, admissible evidence had the Commonwealth disclosed the note. *See id*. Furthermore, the court observed that Wilkersen's claims based on the note contradicted Wilkersen's admissions, both in her videotaped confession and her sworn guilty plea, that she stabbed the victim. The court thus concluded that Wilkersen "failed to demonstrate how she was prejudiced by the Commonwealth's failure to disclose the note prior to the guilty plea hearing." *Id*. at 8.

Following our review, we conclude Wilkersen has not demonstrated a basis for relief, as the PCRA court's findings are supported by the record and she has not established legal error in the court's conclusions. To the extent Pennsylvania recognizes post-plea *Brady* claims, we agree with Wilkersen that the focus of the materiality/prejudice prong is on whether she stated a

reasonable probability that she would not have accepted the Commonwealth's offer and would have instead proceeded to trial. *See Lesko*, 15 A.3d at 417; *Barndt*, 74 A.3d at 199-200. Moreover, we agree that consideration of the admissibility of the note at a trial, or the fact that she confessed or pleaded guilty, would not alone warrant dismissal of a post-plea *Brady* claim. *See Commonwealth v. Chamberlain*, 30 A.3d 381, 412 (Pa. 2011); *Commonwealth v. Mach Transp., LLC*, 305 A.3d 22, 27 (Pa. Super. 2023). However, Wilkersen's remaining arguments are unconvincing for several reasons.

First, we discern no merit to Wilkersen's broad assertions that her confession and sworn admissions to the factual basis of her guilty plea are "immaterial" to the proper consideration of a *Brady* prejudice/materiality. Pennsylvania law permits courts to consider *Brady* evidence, as well as post-sentence challenges to the validity of a plea, in light of the totality of the circumstances. *See Felix*, 303 A.3d at 820 (noting that a court is free to consider the totality of the circumstances surrounding the plea); *Commonwealth v. Selenski*, 228 A.3d 8, 20 (Pa. Super. 2020) (noting that court are not to review the *Brady* evidence "in isolation, but, rather, the omission is to be evaluated in the context of the entire record") (internal citation and quotation marks omitted).[11]

_____

[11] The cases cited by Wilkersen do not support her legal arguments that her confession and admission to the factual basis of her plea are "immaterial." *(Footnote Continued Next Page)*

Second, we do not read the PCRA court's opinion to suggest that the court dismissed Wilkersen's petition simply because the note would not have been admissible at trial or that she pleaded guilty. Instead, like Wilkersen herself, the PCRA court appeared to consider the materiality of the note in the context of the totality of the circumstances of her plea, including the possible uses of the note at trial.[12]

---

*See State v. Alexander*, 869 S.E.2d 215, 233 (N.C. 2022) (stating that "[t]he required materiality determination should be made based upon a consideration of the entire record and focus upon whether the evidence would have affected the jury's deliberations"); *Buffey v. Ballard*, 782 S.E.2d 204, 221 (W.Va. 2015) (granting relief on a post-plea *Brady* claim based on the suppression of DNA test results where the defendant "repeatedly requested the results of DNA testing; was incorrectly informed that such testing was not yet complete; and was presented with a time-limited plea offer that he accepted upon advice of counsel"); *see also State v. Huebler*, 275 P.3d 91, 99 (Nev. 2012) (summarizing the following elements of a test of materiality: "(1) the relative strength and weakness of the State's case and the defendant's case; (2) the persuasiveness of the withheld evidence; (3) the reasons, if any, expressed by the defendant for choosing to plead guilty; (4) the benefits obtained by the defendant in exchange for the plea; and (5) the thoroughness of the plea colloquy"); *Campbell v. Marshall*, 769 F.2d 314, 321 (6th Cir. 1985) (discussing, as a factor, the "establishment of a factual basis" for a plea that complied with the on-the-record procedural requirements for accepting a plea) (citing *Boykin v. Alabama*, 395 U.S. 238 (1969)).

[12] Indeed, the cases Wilkersen cites suggest that a court may consider the likely persuasiveness of the withheld information. *See Miller v. Angliker*, 848 F.2d 1312, 1322 (2d Cir. 1988) (noting that "the decision by the accused would have been different if the prosecution had not withheld the exculpatory evidence, the test is an objective one, depending largely on the likely persuasiveness of the withheld information"); *see also United States v. Persico*, 164 F.3d 796, 805 (2d Cir. 1999) (noting a district court properly assessed a pre-sentence motion to withdraw a plea in light of the strength of the evidence against him); *Sanchez v. United States*, 50 F.3d 1448, 1454 (9th Cir. 1995) (citing *Miller*).

Third, we concur with the PCRA court's decision in so far as the alleged ***Brady*** claims—based on the existence of the note, the fact that police had information someone else stabbed the victim or that Tanya said Corey or Champ stabbed the victim—did not so alter the perceived risks and benefits of proceeding to trial as would render Wilkersen's plea involuntary or unknowing under the totality of the circumstances. ***See Felix*** 303 A.3d at 820. Furthermore, the court's findings of fact, which were supported in the record, do not establish a reasonable probability that Wilkersen would not have accepted the Commonwealth's plea offer. ***See Lesko***, 15 A.3d at 417; ***Barndt***, 74 A.3d at 199-200. Wilkersen's videotaped confession alone was powerful evidence against her. ***See generally Miranda v. Arizona***, 384 U.S. 436, 466 (U.S. 1966) (describing a confession as "the most compelling possible evidence of guilt"). By comparison, the fact that police had information pointing to an alternate suspect did not establish a reasonable basis for foregoing the plea agreement. While favorable, the information contained in the note was diminished by the fact that Tanya remained unidentified and did not state a foundation for her statement that Corey or "Champ" stabbed the victim. ***See*** PCRA Court Opinion, 4/29/25, at 7-8; Amended PCRA Petition, 8/13/24, at Exhibit A.

Moreover, the note bore no dates, and Wilkersen has not established the information about Tanya's statement was received before Wilkersen confessed or even before Wilkersen pleaded guilty. Under the totality of these circumstances, Wilkersen's efforts to suggest she could have fashioned a

better plea agreement had the note been disclosed is, at best, speculative, and her arguments minimize the most obvious component of the Commonwealth's plea offer, *i.e.*, the decision not to proceed on first-degree murder, which would have carried a mandatory life sentence without parole if Wilkersen had been convicted at trial. ***See*** N.T., 4/21/14, at 18.

For these reasons, we cannot say the PCRA court erred in determining that the note was not material to the knowing and voluntary nature of Wilkersen's plea or her decision to accept the Commonwealth's plea offer. Because the record supports the PCRA court's findings of fact, and we discern no error of law in the PCRA court's determination that the note was not material, we affirm the court's decision that Wilkersen's ***Brady*** claim based on the note lacked merit. ***See Staton***, 184 A.3d at 954.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/1/2026