William Kenneth BANKS, Petitioner,

v.

UNITED STATES of America, Respondent.

Crim. No. CR–90–41–N, Civ. Action No. 2:95CV1099.

United States District Court, E.D. Virginia, Norfolk Division.

March 27, 1996.

Douglas Fredericks, Norfolk, VA, for Plaintiff.

Michael Smythers, United States Attorney's Office, Norfolk, VA, Vincent Gambale, Department of Justice, Washington, DC, for Defendant.

## MEMORANDUM AND FINAL ORDER

CLARKE, District Judge.

At issue before the Court is William Kenneth Banks' (Banks) Motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct the sentence imposed as a result of Banks' 1990 guilty plea to federal drug charges. Banks contends that his guilty plea was unconstitutionally taken because material evidence relating to the impeachment of government witnesses was not disclosed to him prior to his plea. Banks contends that his constitutional claims are based in the guarantees of due process and effective assistance of counsel provided in the Fifth and Sixth Amendments. For the reasons set out below, the Court **GRANTS** Banks' Motion and **VACATES** Banks' conviction and sentence in this case.

### I. BACKGROUND

The facts in this case are not in dispute. On March 9, 1990, Banks received a phone call from a Gary Weathers. Weathers was acting at the behest of federal drug enforcement agents and was, at the time of the phone call, in their custody and control. The agents' purpose in arranging the phone call, which was taped by federal agents, was to arrange for Banks to pick up a quantity of what Banks' would think was heroin from an associate of Weathers. On March 12, 1990, Weathers again called Banks, while monitored by federal agents, and arranged the details of the meeting. That afternoon, Banks met with Weathers' "associate," an

undercover federal agent and took a package from the agent. The discussions between Banks and the undercover federal agent were recorded. Banks asked the agent whether or not the package contained "boy," a term that the agent would testify was a slang term for heroin. The agent replied affirmatively. In reality, the package contained flour. Moments after taking the package, Banks was arrested by federal agents.

The tape recordings made by federal agents in this case, which included the two Weathers–Banks telephone conversations and Banks' conversation with the undercover federal agent, were disclosed to Banks' counsel by federal prosecutors prior to Banks' guilty plea. Banks' counsel, Duncan R. St. Clair, III, has again reviewed those tapes in preparation for an evidentiary hearing on Banks' current section 2255 motion, held on March 22, 1996. Mr. St. Clair testified at that hearing that the government's tapes did not contain any explicit reference to drugs generally or heroin specifically. Rather, the only reference in the tapes to drugs was Banks' question if he was getting "boy." The government does not dispute this assessment of the tapes and the Court concludes that Mr. St. Clair's depiction of the content of the tapes is accurate.

Banks was charged with one count of attempted possession of heroin with intent to distribute (21 U.S.C. §§ 841(a)(1) and 846) and one count of unlawful use of a communications facility (21 U.S.C. § 843(b)). On April 2, 1990, Banks, through counsel, submitted a motion requesting the production of all *Brady* material in the government's possession that would serve to exculpate Banks or impeach the government's witnesses. *See Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). On April 12, 1990, the government responded, stating that they would supply such information in conformance with the time frame set out in Rule

16 of the Federal Rules of Criminal Procedure. On May 11, 1990, Banks pled guilty to both counts. At the taking of the guilty plea, this Court had the following dialogue with the Assistant United States Attorney, Charles D. Griffith, Jr. and with Banks' counsel, Duncan R. St. Clair, III:

> THE COURT: Well, has the United States turned over to Mr. St. Clair all of the information he'd be entitled to under the rules of discovery?
>
> MR. GRIFFITH: Yes, sir.
>
> .    .    .    .    .
>
> THE COURT: All, right, Mr. St. Clair, has the government turned over to you everything that you would be entitled to under the rules of discovery?
>
> MR. ST. CLAIR: Yes, sir, Your Honor.

Tr. of Guilty Plea at 3.

The circumstances giving rise to this section 2255 motion are as follows. In the time following Banks' arrest but *before* Banks' guilty plea, Gary Weathers took on a larger role as government informant. During a series of debriefings with federal agents, Weathers implicated a number of individuals in a large drug conspiracy. Weathers' testimony lead to the indictment and ultimate conviction of many of these individuals.[1] During the course of the debriefings and unbeknownst to the United States Attorney, federal law enforcement personnel allowed Weathers, who was in custody, conjugal visits with his wife and girlfriend in government offices. Because the United States Attorney had no knowledge of the conjugal visits before Banks' guilty plea, information regarding the conjugal visits was not given to Banks or his attorney prior to his plea. Banks now contends that his guilty plea is invalid because his counsel was unconstitutionally ineffective due to the nondisclosure of the conjugal visits.[2]

---

**1.** Banks was among the those indicted in the conspiracy that was uncovered through Weathers debriefings. Banks went to trial on that charge and was convicted. He is currently serving a sentence of 310 months, running concurrently with the sentence imposed in this case. Banks' conspiracy conviction is not under review in this Order.

**2.** The United States has, in other cases related to the drug conspiracy conviction, agreed to a reduction of sentence due to the nondisclosure of Weathers' conjugal visits. The United States states in its brief:

> Under agreements with the government, several of the co-conspirators (Pointer, Staton, Copeland and Blow) who were convicted at trial were resentenced by Judge Doumar be-

## II. ANALYSIS

### a. The Applicability of Brady/Giglio Disclosure to Guilty Pleas

■■■ The validity of a guilty plea hinges on whether it was "a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 368, 88 L.Ed.2d 203 (1985); *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970). In the absence of impermissible conduct by the prosecution, a plea is deemed intelligent if it is made with the advice of competent counsel and if the defendant is aware of the nature of the charge against him. *Brady v. United States*, 397 U.S. 742, 756, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970). It is well settled in criminal trials that the prosecution has an obligation to produce evidence in its possession that is favorable to the defendant. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963); *Love v. Johnson*, 57 F.3d 1305, 1313 (4th Cir.1995). "Favorable" evidence includes not only evidence that is exculpatory but also evidence that serves to impeach the credibility of government witnesses. *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 765, 31 L.Ed.2d 104 (1972); *Love*, 57 F.3d at 1313.

■■■ The initial question that must be addressed by this Court is whether a guilty plea may be deemed "voluntary and intelligent" if it is given despite the nondisclosure of Brady/Giglio material. While the Fourth Circuit has not addressed this issue, four other circuits have concluded that nondisclosure of *Brady/Giglio* material may be sufficient to invalidate a guilty plea. *Sanchez v. United States*, 50 F.3d 1448, 1453 (9th Cir. 1995); *White v. United States*, 858 F.2d 416, 422 (8th Cir.1988), *cert. denied*, 489 U.S. 1029, 109 S.Ct. 1163, 103 L.Ed.2d 221 (1989); *Miller v. Angliker*, 848 F.2d 1312, 1320 (2d Cir.), *cert. denied*, 488 U.S. 890, 109 S.Ct. 224, 102 L.Ed.2d 214 (1988); *Campbell v. Marshall*, 769 F.2d 314, 321 (6th Cir.1985), *cert. denied*, 475 U.S. 1048, 106 S.Ct. 1268, 89 L.Ed.2d 576 (1986); *United States v. Millan–Colon*, 829 F.Supp. 620, 635 (S.D.N.Y. 1993).

The Supreme Court has stated that a conviction by guilty plea "is no more foolproof than full trials to the court or to the jury." *Brady v. United States*, 397 U.S. 742, 758, 90 S.Ct. 1463, 1473, 25 L.Ed.2d 747 (1970). "Accordingly, [courts] take great precautions against unsound results, and [ ] should continue to do so, whether conviction is by plea or by trial." *Id.* Further, the Court has acknowledged that "[o]ften the decision to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against him." *Id.* at 756, 90 S.Ct. at 1472 (1970); *Miller*, 848 F.2d at 1320. In light of the Supreme Court's concerns with insuring the legitimacy of guilty pleas, this Court finds the holding of the four other circuits persuasive. Therefore, this Court concludes that the failure to disclose *Brady/Giglio* material may be grounds to invalidate a guilty plea.[3]

---

cause the government's chief witness in the conspiracy case, Gary Weathers, had conjugal visits, which were not disclosed to the defense prior to trial, with both his wife and his girlfriend during his debriefings. Since Weathers had been the principal government witness at trial and had furnished virtually all of the information *underlying these defendants' conspiracy-based sentences*, the failure to disclose the conjugal visits, which could have been used to impeach Weathers' credibility, arguably constituted a violation of *Brady v. Maryland*, 373 U.S. 83, 87 [83 S.Ct. 1194, 1196, 10 L.Ed.2d 215] (1963) and *Giglio v. United States*, 405 U.S. 150, 154 [92 S.Ct. 763, 765, 31 L.Ed.2d 104] (1972).
Gov't's Resp. at 3.

**3.** Banks has stated that his claim rests primarily on ineffective assistance of counsel grounds but has also alternatively argued a due process claim under *Brady* and *Giglio*. This case involves the intelligent nature of Banks' guilty plea, and therefore implicates the advice that counsel gave Banks. Cf. *Fields v. Attorney General*, 956 F.2d 1290, 1296 n. 16 (4th Cir.1992) ("the consensual character of a plea is necessarily implicated when, as here, a defendant alleges ineffective assistance of counsel in connection with his plea"). Nevertheless, the Court finds that this case falls more squarely within the settled framework established in *Brady, Giglio*, and their progeny. Therefore, this Court only addresses Banks' *Brady/Giglio* claim. Cf. *Pennsylvania v. Ritchie*, 480 U.S. 39, 56, 107 S.Ct. 989, 1000, 94 L.Ed.2d 40 (1987) (deciding a case under the due process clause rather than the Sixth Amendment's compulsory process clause where due process law provided a better framework for review).

#### b. Materiality of Brady/Giglio Information

The mere nondisclosure of Brady/Giglio evidence does not automatically render the results of a jury trial invalid. Giglio, 405 U.S. at 154, 92 S.Ct. at 765 ("We do not, however, automatically require a new trial whenever a combing of the prosecutors files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict.") (internal quotation omitted). Rather, the Court has required a showing that the nondisclosed evidence be "material to guilt or punishment." Pennsylvania v. Ritchie, 480 U.S. 39, 57, 107 S.Ct. 989, 1001, 94 L.Ed.2d 40 (1987). It follows that the same showing of "materiality" must be made to invalidate a guilty plea. Sanchez, 50 F.3d at 1454; Miller, 848 F.2d at 1320–21.

In the trial context, "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Ritchie, 480 U.S. at 57, 107 S.Ct. at 1001 (quoting United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985) (opinion of Blackmun, J.)). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." Id. (quoting Bagley, 473 U.S. at 682, 105 S.Ct. at 3383 (opinion of Blackmun, J.)). In creating a materiality standard for the nondisclosure of favorable information prior to a guilty plea, the Miller court found it useful to examine the Supreme Court's prejudice standard in ineffective assistance of counsel claims at guilty pleas. Miller, 848 F.2d at 1321–22. The Miller court noted that "prejudice" in an ineffective assistance case is the same thing as "materiality" in an withheld evidence case. Id. at 1321; accord Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984) ("the appropriate test for prejudice [in ineffective assistance cases] finds its roots in the test for materiality of exculpatory information not disclosed to the defense by the prosecution"). The Supreme Court has held that to show prejudice through ineffective assistance at a guilty plea, the defendant must establish "a reason-able probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). Adapting this standard to the disclosure of exculpatory evidence cases, a defendant establishes "materiality" by showing a reasonable probability that but for the failure to disclose the Brady/Giglio evidence, the defendant would have refused to plead and would have opted for trial. Sanchez, 50 F.3d at 1454. The Court adopts this standard for evaluating "materiality" in Brady/Giglio claims arising at a guilty plea. See id.; Miller, 848 F.2d at 1322.

#### c. Conjugal Visits as Material Brady/Giglio Information

The Court concludes that the information regarding the conjugal visits received by Gary Weathers was favorable information and its disclosure was required under the Brady/Giglio standard. See Brady, 373 U.S. at 87, 83 S.Ct. at 1196. While there is no indication that the United States Attorney's Office acted at anything less than the highest standard of ethics and integrity in this case, it is clear that the government, as an entity, possessed knowledge of the conjugal visits afforded Weathers. Indeed, it was federal law enforcement agents who made the visits possible. The United States Attorney is accountable for the information gathered by the various arms of federal law enforcement in the course of an investigation. See United States v. Bryan, 868 F.2d 1032, 1036 (9th Cir.1989); cf. Giglio, 405 U.S. at 154, 92 S.Ct. at 765 ("The prosecutor's office is an entity and as such it is the spokesman for the Government."); Love, 57 F.3d at 1314 ("The Brady right, ..., is not limited to information in the actual possession of the prosecutor and certainly extends to any in the possession of state agencies subject to judicial control.") (state trial).

The information regarding the conjugal visits was clearly favorable in that it could have been used to attack the credibility of Weathers and of the government's agents who arranged the "sting" operation. The only question remaining is whether this in-

formation rises to the level of "material." The Court concludes that it does.

Banks' counsel at the time of the plea, Duncan R. St. Clair, III, has testified that Banks initially desired to plead not guilty and pursue a defense that he did not know that he was to pick up drugs from Weathers' "associate," but rather thought he was to pick up money. Mr. St. Clair also stated that he believed the taped conversations between Weathers and Banks showed that Weathers had called Banks saying that he was in prison and needed to get money to his family. The conversation could thus arguably be construed as implying that Banks was to pick up money and not drugs from Weathers' associate. Mr. St. Clair also testified that knowledge of the conjugal visits would have been significant in evaluating the strength of the government's case and consequently advising Banks whether to plead or stand trial. Recalling that the tape recorded conversations between Weathers and Banks did not contain explicit reference to "drugs" or to "heroin," Weathers' testimony in a trial would be vital in establishing that Banks knew he was going to pick up heroin. The only other evidence that linked Banks to drugs was Banks' question to the undercover federal agent asking if he was getting "boy." Linking that term to heroin would necessitate testimony either from the federal agent or, presumably, from Weathers.

The words and actions of Banks in this case were criminal only when seen in context. That context could only be supplied for a jury by two sources: Gary Weathers and federal law enforcement agents. Close on the heels of Weathers' cooperation with the government in this matter, Weathers, while in the custody and control of federal agents, was allowed to have sex with his wife and his girlfriend in government offices. It is reasonable to conclude that this information would be explosive and damaging to the government's case if presented to a jury. It is impeachment evidence that a jury would be entitled to consider in evaluating the credibility and integrity of both Weathers and the federal law enforcement agents. As vital impeachment evidence, information regarding the conjugal visits was material information under the *Brady/Giglio* standard. Its nondisclosure renders Banks' guilty plea unreliable and therefore invalid.

At oral argument, the United States Attorney cautioned that granting Banks the relief he sought would set too low a standard for releasing a person who had admitted his guilt. The Court disagrees. Four circuits have held that the government's failure to disclose material, exculpatory or impeaching information could serve as grounds for invalidating a guilty plea. As no other courts have held to the contrary and this circuit has not yet decided the issue, this Court agrees with the other circuits and concludes that granting relief in this case is consistent with existing precedent. If the government had disclosed its knowledge of the conjugal visits at the taking of Banks' plea some six years ago, this Court would not have accepted that plea until Banks and his counsel had a chance to assimilate that information into their decision making processes. At the time of Banks' plea, there was a reasonable probability that information regarding the conjugal visits would have convinced Banks to take the case to trial. The fact that the government's knowledge of the conjugal visits has not come to light until recently does not alter the requirements of due process and justice.

## III. CONCLUSION

Banks' section 2255 Motion is **GRANTED**. The conviction and sentence in this case are hereby **VACATED**. Banks remains under sentence for his 1990 conspiracy conviction (Crim. No. 90–108–N).

**IT IS SO ORDERED.**