**Javier Hincapie SANCHEZ,**
**Petitioner–Appellant,**

v.

**UNITED STATES of America,**
**Respondent–Appellee.**

No. 93–56315.

United States Court of Appeals,
Ninth Circuit.

Submitted Feb. 10, 1995 *.

Decided March 21, 1995.

---

* The panel unanimously find this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34–4.

Javier Hincapie Sanchez, Memphis, TN, in pro se, for petitioner-appellant.

Robert T. Scott, Asst. U.S. Atty., Los Angeles, CA, for respondent-appellee.

Before: BROWNING, D.W. NELSON, and HAWKINS, Circuit Judges.

D.W. NELSON, Circuit Judge:

Javier Hincapie Sanchez appeals the district court's denial of his motion under 28 U.S.C. § 2255 to vacate his guilty plea and sentence in his criminal conviction for conspiracy to distribute cocaine, 21 U.S.C. § 846, and possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1). Hincapie Sanchez argues that (1) the government's actions in this case constituted outrageous government conduct; (2) the prosecution committed a *Brady* violation by failing to disclose that two men who visited Hincapie Sanchez in prison were government infor-

mants; (3) these government informants coerced Hincapie Sanchez to plead guilty; (4) the visit by the government informants outside the presence of Hincapie Sanchez's attorney violated his Sixth Amendment right to counsel; and (5) Hincapie Sanchez's defense attorney and his attorney for the § 2255 motion provided ineffective assistance of counsel. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## BACKGROUND

In February 1989, the FBI began an investigation of Hincapie Sanchez after two confidential government informants identified him as a drug dealer. Informant Loukas Christodoulou introduced Hincapie Sanchez to FBI agent Kathleen Carson, who was posing as a wealthy businessperson. After negotiations, Hincapie Sanchez agreed to sell 24 kilograms of cocaine to Carson. On March 10, 1989, after Hincapie Sanchez, Christodoulou, and another individual packed and transported the cocaine to a designated location, Carson and Los Angeles County Sheriff's Department (LASD) officials arrested Hincapie Sanchez.

On May 18, 1989, Hincapie Sanchez pleaded guilty to conspiracy to distribute cocaine and to possession with intent to distribute. During the plea colloquy, Hincapie Sanchez stated that he had not been subject to threats or promises of favors or leniency. On July 31, 1989, the court sentenced him to 235 months' imprisonment, to be followed by five years of supervised release.

On December 12, 1990, Hincapie Sanchez filed a motion under 28 U.S.C. § 2255 to vacate and set aside his guilty plea and the sentence. He argued that the government improperly failed to disclose that Willie and Oscar Murcia, who supplied some of the cocaine for the deal and later persuaded him to plead guilty, had been informants for the LASD. Hincapie Sanchez further argued that had he known that the Murcias were informants, he would have asserted defenses of entrapment and outrageous government conduct rather than plead guilty. He also alleged that his plea was not knowing and voluntary because he pleaded guilty on the understanding that the Murcias would arrange for his release and that his plea would prevent the indictment of his wife.

At an evidentiary hearing on the motion, Hincapie Sanchez testified that Willie Murcia had supplied some of the cocaine for the deal, and this testimony was corroborated by a recording of Willie Murcia. However, the courier who had brought the cocaine to Hincapie Sanchez, an informant named Tony Avila, testified that he had acted under instructions from a dealer named Carlos Enrique Orozco ("Cacique"), with the approval of Avila's government contact, LASD Deputy Sheriff Steve Nichols, who regularly monitored Avila's work for Cacique. Although Avila knew that Murcia was both a drug dealer who was acquainted with Cacique and an informant who worked with Nichols, he did not know that Murcia had supplied the drugs for this deal. The prosecuting attorneys, Agent Carson, and another agent provided statements that although they were aware that Murcia was an informant for the LASD, they had not known that Murcia had supplied the drugs or had induced Hincapie Sanchez to plead guilty.

In addition, several witnesses testified that the Murcias had talked of their ability to secure the release of prisoners through contacts in Washington, D.C., and that the Murcias had told Hincapie Sanchez that they could secure his release if he pleaded guilty. The Murcias also told him that pleading guilty would prevent the indictment of his wife and of the Murcias themselves.

Based on this evidence, the magistrate judge recommended denial of the section 2255 motion on the grounds that (1) even though Willie Murcia had both supplied the drugs and persuaded Hincapie Sanchez to plead guilty, the prosecutors had no knowledge of this involvement, and (2) the plea resulted not from coercion, but from Hincapie Sanchez's expectation that the Murcias would secure his release from prison by illegal means. The district court adopted the magistrate judge's findings of fact and conclusions.

## STANDARD OF REVIEW

■ This court reviews a denial of a section 2255 motion de novo. *Frazer v. United*

*States*, 18 F.3d 778, 781 (9th Cir.1994). The district court's findings of fact are reviewed for clear error. *Campbell v. Wood*, 18 F.3d 662, 681 (9th Cir.) (en banc), *cert. denied*, —— U.S. ——, 114 S.Ct. 2125, 128 L.Ed.2d 682 (1994).

## DISCUSSION

### I. Outrageous Government Conduct

■■■ Hincapie Sanchez argues that the totality of the government's activity in this case constituted outrageous government conduct, in violation of the Fifth Amendment Due Process Clause. This court reviews the issue of outrageous government conduct de novo. *United States v. Smith*, 924 F.2d 889, 897 (9th Cir.1991). We reject this argument.

To prevail on an outrageous government conduct claim under the facts in this case, Hincapie Sanchez would need to show that the government's conduct amounted to the "engineering and direction of [a] criminal enterprise from start to finish." *United States v. Barrera–Moreno*, 951 F.2d 1089, 1092 (9th Cir.1991) (quoting *Smith*, 924 F.2d at 897), *cert. denied*, —— U.S. ——, 113 S.Ct. 417, 121 L.Ed.2d 340 (1992). In this instance, it is undisputed that the government acted as the buyer in this transaction. However, Hincapie Sanchez's claim that the government was also the supplier requires a finding not only that Willie Murcia supplied drugs for this deal, but that he was acting as a government agent at the time. *See United States v. Simpson*, 813 F.2d 1462, 1467 (9th Cir.) (noting that actions of informants can only constitute outrageous government conduct if attributable to the government itself), *cert. denied*, 484 U.S. 898, 108 S.Ct. 233, 98 L.Ed.2d 192 (1987); *United States v. Prairie*, 572 F.2d 1316, 1319 (9th Cir.1978).

We find that the district court's conclusion that Willie Murcia was not a government agent at the time of the sale was not clearly erroneous. Willie and Oscar Murcia were known government informants for the LASD, had worked previously with Deputy Steve Nichols, and had been linked to Cacique, the drug dealer whom Tony Avila (the courier) claimed had provided the drugs in this case. However, these facts do not prove that they were agents for the government in this particular instance, absent a showing that the government directed or supervised the conduct in question. *See United States v. Fontenot*, 14 F.3d 1364, 1369 (9th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 431, 130 L.Ed.2d 343 (1994); *United States v. Busby*, 780 F.2d 804, 807 (9th Cir.1986) (stating that prior service as an informant does not establish agency for later actions when the government was "wholly unaware" of those activities). Agent Carson specifically denied any knowledge of the supplier of the cocaine or of the Murcias' involvement in the drug transaction. Although Hincapie Sanchez testified that Willie Murcia had supplied some of the drugs for the deal, he admitted that he had negotiated with Murcia alone, outside the presence of other informants and agents. Moreover, Avila testified that he did not know that Murcia was involved in this deal. Since Avila assumed that Cacique was the only supplier, it is reasonable to conclude that Nichols, who was informed of the transaction by Avila, did not know that the Murcias were involved. The district court's factual finding, therefore, was not clearly erroneous.

■■■ Hincapie Sanchez's outrageous government conduct claim also relies on the premise that the government, through the Murcias, induced him to plead guilty. We find, however, that the district court's conclusion that the Murcias were not government agents at the time that they visited Hincapie Sanchez in prison was not clearly erroneous. Although Nichols and Christodolou had been asked to monitor the Murcias' drug-related activities, there is no evidence that the government monitored the substance of their jailhouse conversations with Hincapie Sanchez. Nor is there any evidence that they were acting under instructions from the government. Aside from Agent Carson's admission that she was aware that the Murcias had visited Hincapie Sanchez, the only evidence on this point is the testimony by Agent Carson and the prosecuting attorneys that they had no knowledge of promises made by the Murcias to Hincapie Sanchez to induce him to plead guilty. Because the Murcias' visit to prison was not attributable to the government, it could not constitute outrageous gov-

ernment conduct.[1]  *See Simpson,* 813 F.2d at 1467.

With our findings that the Murcias were not acting as government agents in this case, Hincapie Sanchez's outrageous government conduct claim rests solely upon the facts that a government informant, Christodolou, introduced Hincapie Sanchez to an undercover agent/buyer and that Christodolou helped package the drugs.  These facts do not constitute outrageous government conduct.  *See Smith,* 924 F.2d at 897 (finding no violation when a government informant introduced a drug rehabilitation patient to an undercover agent posing as a buyer and repeatedly encouraged him to sell to the agent); *United States v. Wiley,* 794 F.2d 514, 516 (9th Cir.1986) (declining to find a due process violation when a government informant recruited the defendant to smuggle drugs into a prison and also supplied the drugs through an undercover agent).

## II.  The Brady Claim

Hincapie Sanchez also asserts that the government's failure to disclose the Murcias' status as LASD informants constituted a violation of its duty to disclose exculpatory information under *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963).  We review claims of *Brady* violations de novo.  *United States v. Woodley,* 9 F.3d 774, 777 (9th Cir.1993).

Because a defendant who pleads guilty generally cannot later raise independent claims of constitutional violations, *see Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973), we first consider whether Hincapie Sanchez can assert a *Brady* claim as part of his motion to vacate the guilty plea.  Three circuits have held that a defendant can argue that his guilty plea was not voluntary and intelligent because it was made in the absence of withheld *Brady* material.  *See White v. United States,* 858 F.2d 416, 422 (8th Cir.1988), *cert. denied,* 489 U.S. 1029, 109 S.Ct. 1163, 103 L.Ed.2d 221 (1989); *Miller v. Angliker,* 848 F.2d 1312, 1319–20 (2d Cir.), *cert. denied,* 488

U.S. 890, 109 S.Ct. 224, 102 L.Ed.2d 214 (1988); *Campbell v. Marshall,* 769 F.2d 314, 321 (6th Cir.1985), *cert. denied,* 475 U.S. 1048, 106 S.Ct. 1268, 89 L.Ed.2d 576 (1986).

This exception to the general bar on constitutional claims is sensible, because "a defendant's decision whether or not to plead guilty is often heavily influenced by his appraisal of the prosecution's case."  *Miller,* 848 F.2d at 1320.  A waiver cannot be deemed "intelligent and voluntary" if "entered without knowledge of material information withheld by the prosecution."  *Id.* Moreover, if a defendant may not raise a *Brady* claim after a guilty plea, prosecutors may be tempted to deliberately withhold exculpatory information as part of an attempt to elicit guilty pleas.  We therefore hold that a defendant challenging the voluntariness of a guilty plea may assert a *Brady* claim.

In this case, however, we conclude that *Brady* did not require the government to disclose as exculpatory evidence the Murcias' status as informants for the LASD. First, we find that the government was not aware of the alleged *Brady* material.  The government has no obligation to produce information which it does not possess or of which it is unaware.  *See United States v. Bryan,* 868 F.2d 1032, 1036 (9th Cir.) (stating that the prosecution has knowledge of information in the possession or control of federal agencies participating in the investigation), *cert. denied,* 493 U.S. 858, 110 S.Ct. 167, 107 L.Ed.2d 124 (1989); *United States v. Polizzi,* 801 F.2d 1543, 1553 (9th Cir.1986); *United States v. Hsieh Hui Mei Chen,* 754 F.2d 817, 824 (9th Cir.), *cert. denied,* 471 U.S. 1139, 105 S.Ct. 2684, 86 L.Ed.2d 701 (1985).  Although the prosecution was aware that the Murcias had worked as LASD informants, we have upheld the district court's finding that the federal prosecutors were unaware that the Murcias had any role in the sale of the drugs to Hincapie Sanchez or in his decision to plead guilty.  Because the informant status of individuals is only exculpatory when coupled with the fact that those persons were

---

1.  We note, however, our concern over the government's handling of this case.  We strongly urge the government to exercise greater control over the activities of its informants, for even the appearance of impropriety can damage the integrity of the judicial process.

acting as government agents in the present case, we find that the prosecution was unaware of the *Brady* material sought by Hincapie Sanchez.

■■■ Second, we find no *Brady* violation because the information sought was not material to Hincapie Sanchez's decision to plead guilty. Failure to disclose information only constitutes a *Brady* violation if the requested information is "material" to the defense. *United States v. Shaffer*, 789 F.2d 682, 687–88 (9th Cir.1986). Although the usual standard of materiality is whether the failure to disclose the evidence "undermines confidence in the outcome of the trial," *United States v. Bagley*, 473 U.S. 667, 678, 105 S.Ct. 3375, 3381, 87 L.Ed.2d 481 (1985); *Shaffer*, 789 F.2d at 688, the issue in a case involving a guilty plea is whether there is a reasonable probability that but for the failure to disclose the *Brady* material, the defendant would have refused to plead and would have gone to trial. *Miller*, 848 F.2d at 1322; *cf. White*, 858 F.2d at 424 (applying the standard of whether undisclosed material "would have been controlling in the decision whether to plead") (quoting *Campbell*, 769 F.2d at 324).

■■■ Hincapie Sanchez claims that if he had known that the Murcias were informants, he would have gone to trial and asserted defenses of outrageous government conduct and entrapment. However, we agree with the reasoning of the Second Circuit in *Miller* and hold that the test for whether the defendant would have chosen to go to trial is an objective one that centers on "the likely persuasiveness of the withheld information." *Miller*, 848 F.2d at 1322. As previously discussed, the outrageous government conduct claim is not viable. In addition, an entrapment defense almost certainly would fail. Hincapie Sanchez would have to show both government inducement to commit the crime and a lack of predisposition to commit the crime. *United States v. Lessard*, 17 F.3d 303, 305 (9th Cir.1994). However, Hincapie Sanchez's history as a drug trafficker, the fact that he approached Willie Murcia to purchase the drugs, and the absence of any evidence that he was reluctant to engage in the transaction makes an entrapment defense objectively implausible because Hincapie Sanchez could not show a lack of predisposition. *See United States v. Smith*, 924 F.2d 889, 897–98 (9th Cir.1991) (upholding the district court's refusal to give an entrapment instruction despite evidence of the defendant's reluctance to complete the transaction and his lack of record as a drug dealer).

Thus, under an objective standard, the Murcias' status as informants was not material to the decision whether to plead guilty. *See Campbell*, 769 F.2d at 318, 324 (finding that evidence that the victim was carrying a gun did not affect the decision to plead guilty, even though the defendant had claimed that he acted in self-defense); *White*, 858 F.2d at 423–24 (finding that information that a potential witness's story had changed after meeting with the prosecutor and that the witness's cooperation had been secured by promises of leniency did not affect the guilty plea). Accordingly, we reject Hincapie Sanchez's *Brady* claim.

### III. Coercion of the Guilty Plea

■■■ Hincapie Sanchez also argues that his guilty plea should be vacated because it was not "knowing and voluntary." Specifically, he asserts that he had relied on the Murcias' representations that they could secure his release through contacts in Washington, D.C., and that he had been coerced by the threat that his wife would be indicted if he did not plead. This court reviews the voluntariness of a guilty plea de novo. *United States v. Roberts*, 5 F.3d 365, 368 (9th Cir.1993). Generally, a guilty plea is void if it was "induced by promises or threats which deprive it of the character of a voluntary act." *Machibroda v. United States*, 368 U.S. 487, 493, 82 S.Ct. 510, 513, 7 L.Ed.2d 473 (1962); *Iaea v. Sunn*, 800 F.2d 861, 866 (9th Cir.1986).

■■■ First, Hincapie Sanchez argues that his plea was not voluntary because he relied on the Murcias' representation that they could secure his release through illicit means. However, a plea based on an expectation of unlawful circumvention of the justice system cannot be vacated as involuntary. *See United States v. Ulano*, 468 F.Supp. 1054, 1069 (C.D.Cal.1979), *aff'd*, 614 F.2d

1257 (9th Cir.1980). The *Ulano* court held that where a defendant had agreed to plead guilty in reliance on assurances that the judge could be bribed with cocaine, the defendant could not later assert that his plea was not knowing and voluntary. *Id.* at 1056, 1064. Similarly, Hincapie Sanchez "was a participant in the skulduggery" and cannot claim that his plea was involuntary. *Id.* at 1069. To permit a defendant to retract a guilty plea that was based on a promise to subvert the justice system would have unacceptable systemic consequences:

> Recognition of the validity of this claim would put the courts at the mercy of the underworld. They could get together in every case involving their ilk, and make some kind of promise or representation concerning the penalty on a plea of guilty; and the defendant could manipulate the case by pleading guilty with an assurance that the conviction could be set aside if the sentence did not suit him. *Id.* at 1069.

The fact that the Murcias previously had worked as government informants does not alter our conclusion. First, we have upheld the district court's conclusion that the Murcias were not acting as government agents at the time that they visited Hincapie Sanchez. Second, the testimony that the Murcias previously had bragged of their ability to secure the release of prison inmates reveals that their conversation with Hincapie Sanchez was not a scheme specifically invented by the government to coerce him to plead guilty. Third, because Hincapie Sanchez claims that he was wholly unaware that the Murcias were government informants, there was no additional coercion imposed by their status. The choice with which he was faced was precisely the choice presented in *Ulano*: plead guilty on the hope that your underworld associates will secure your release, or go to trial. Finally, Hincapie Sanchez, on three occasions during the plea colloquy, denied that he was pleading in reliance on any such promises. *See Ulano*, 468 F.Supp. at 1064 (stating that a defendant is bound by his answers during the plea colloquy). We therefore reject the claim that Hincapie Sanchez's reliance on promises to secure his illegal release rendered his plea involuntary.

Hincapie Sanchez also challenges the district court's finding that his plea was voluntary on the ground that the court failed to consider the effect of the Murcias' statement that his wife might be indicted if he did not plead guilty. We have indicated that governmental threats of criminal sanctions against relatives are relevant to the voluntariness determination. *Johnson v. Wilson,* 371 F.2d 911, 912 (9th Cir.1967) (holding that police threats to charge petitioner's pregnant wife with a drug offense was relevant to the determination of voluntariness); *United States v. Sutton,* 794 F.2d 1415, 1422 (9th Cir.1986) (considering and rejecting a claim of coercion based on a threat of prosecution of the defendant's female companion). In the present case, however, the claim of coercion arising from a threatened prosecution of Hincapie Sanchez's wife is not persuasive. First, during the plea colloquy, Hincapie Sanchez specifically denied that any threats and coercions had been used against him. Courts generally consider such responses to be strong indicators of the voluntariness of the defendant's guilty plea. *See United States v. Andrade–Larrios,* 39 F.3d 986, 990–91 (9th Cir.1994); *Ulano,* 468 F.Supp. at 1064.

More importantly, Hincapie Sanchez did not claim at his section 2255 evidentiary hearing that he pleaded guilty out of fear that his wife would be indicted. When asked why he had denied during the plea colloquy that any coercion or promises had induced his plea, Hincapie Sanchez stated that he did not want to jeopardize the Murcias' efforts to obtain his release, *not* that he feared for his wife's freedom. His other responses all focused on his assertion that he pleaded guilty because he was convinced that he would be released; none assert that he did so to protect his wife. Because Hincapie Sanchez's own testimony fails to assert that he was coerced by threats, we reject his claim that he was coerced into pleading guilty.

**IV. Custodial Interrogation**

Hincapie Sanchez alleges that because the Murcias were government informants, the government violated his Sixth Amendment right to counsel when they

spoke to him outside the presence of his counsel and induced him to plead guilty. Because Hincapie Sanchez did not raise this argument below, it has been waived. *United States v. Keller*, 902 F.2d 1391, 1395 (9th Cir.1990). Even if the argument were not waived, our finding that the Murcias were not government agents at the time of their visit would defeat Hincapie Sanchez's claim. *See Brooks v. Kincheloe*, 848 F.2d 940, 945 (9th Cir.1988).

## V. Ineffective Assistance of Counsel

 Hincapie Sanchez asserts claims of ineffective assistance of counsel arising from two separate legal representations. This court reviews such claims de novo. *United States v. Swanson*, 943 F.2d 1070, 1072 (9th Cir.1991). In order to prevail, a defendant must show that (1) his counsel's performance was deficient and (2) the ineffective assistance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

First, Hincapie Sanchez argues that his attorney during the original criminal proceedings provided ineffective assistance by failing to file for discovery. This claim has been waived because Hincapie Sanchez failed to raise it before the district court on the section 2255 motion. *Keller*, 902 F.2d at 1395; *see also Willard v. California*, 812 F.2d 461, 465 (9th Cir.1987) (habeas corpus case).

Second, Hincapie Sanchez contends that the failure of his section 2255 attorney to subpoena the Murcias and Nichols constituted ineffective assistance. This claim fails because there is no constitutional right to counsel at a collateral, post-conviction section 2255 proceeding. *United States v. Angelone*, 894 F.2d 1129, 1130 (9th Cir.1990). Without such a right, Hincapie Sanchez cannot assert a claim for ineffective assistance of counsel. *Id.; Wainwright v. Torna*, 455 U.S. 586, 587–88, 102 S.Ct. 1300, 1301, 71 L.Ed.2d 475 (1982) ("Since respondent had no constitutional right to counsel, he could not be deprived of the effective assistance of counsel. . . ."); *Miller v. Keeney*, 882 F.2d 1428, 1432 (9th Cir.1989); *cf. Coleman v. Thompson*, 501 U.S. 722, 752, 111 S.Ct. 2546, 2566,

115 L.Ed.2d 640 (1991) (finding an invalid ineffective assistance claim because there is no constitutional right to counsel at a state post-conviction proceeding). Thus, we reject the ineffective assistance of counsel claim.

## CONCLUSION

For the foregoing reasons, we deny the section 2255 motion. We also reject Hincapie Sanchez's motion for supplemental briefing. Accordingly, the judgment of the district court is AFFIRMED.