81 F.3d 171
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Edwin Wallace WHEELER, Defendant-Appellant.
 No. 95-15852.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 16, 1996.
Decided April 2, 1996.
 
 Before: HUG, Chief Judge, and HALL and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Edwin Wallace Wheeler filed a writ of habeas corpus attacking his convictions of securities violations under 15 U.S.C. §§ 77q(a), 77x. Wheeler claims that he was denied effective assistance of counsel because his attorney, Dwight Duncan: (1) did not object to the admission of a consent decree Wheeler had previously entered into with the SEC; (2) did not cross-examine a government witness; (3) did not consult or hire an expert witness to describe the nature of "blind pool" corporations to the jury; and (4) did not object to factual inaccuracies contained in Wheeler's presentence report. When the district court denied his writ, he appealed. We affirm.
 
 I.
 
 3
 In 1987, Edwin Wallace "Bud" Wheeler became involved with a company named CTI Technical, Inc. ("CTI"). CTI wished to have a public stock offering and Wheeler hired Gary Wykidal, a California attorney, to prepare an Amended Registration Statement, Form S-18, which Wheeler later filed with the Securities and Exchange Commission ("SEC"). The Registration Statement contained a prospectus, in which CTI disclosed that it was a "blind pool" corporation--a type of corporation which has not yet started to operate; the stock offering was designed to raise money with which CTI would attempt to acquire other companies. The Registration Statement listed Kent Midby, Donald Dorsey, and Marnell Binkley as officers and directors of CTI. The Statement did not disclose that Wheeler was a promoter of the corporation. As a result of the public offering, CTI raised $139,000.
 
 
 4
 In 1987, the SEC began to investigate Wheeler and CTI. This investigation culminated in a civil consent decree between Wheeler and the SEC. Wheeler signed a Consent and Stipulation, which was incorporated into the Final Judgment; the Final Judgment contained a number of "Findings of Fact."[1] Many of these Findings were prejudicial to Wheeler: (1) that Wheeler failed to disclose that Midby, Dorsey, and Binkley were mere figureheads in CTI; (2) that Wheeler had forged their signatures on the Registration Statement; and (3) that Wheeler failed to disclose he was a promoter of CTI.
 
 
 5
 Three years later, the SEC instituted criminal proceedings against Wheeler, charging him with violations of 15 U.S.C. §§ 77q(a), 77x for failure to disclose material information in CTI's Registration Statement. Dwight Duncan, a public defender, was appointed as his counsel. In the course of the two-day trial, the government introduced the consent decree (and its Findings of Fact) into evidence; Duncan did not object. Nor did Duncan hire an expert witness to explain the nature of "blind pool" corporations to the jury. Wheeler was convicted.
 
 
 6
 The presentencing report prepared thereafter noted that Wheeler's involvement in CTI adversely harmed many of CTI's investors. Because the civil consent decree effectively stated that no people were harmed, Wheeler urged Duncan to object to this factual inaccuracy in the report. Although Duncan did so in a pre-hearing memorandum, he did not do so at the sentencing hearing. When the judge asked Wheeler and Duncan at the hearing whether the report contained inaccuracies, both replied, "No." After a separate appeal of the sentence, Wheeler was sentenced to five years incarceration, with all but six months suspended, and three years probation.
 
 
 7
 Wheeler filed a petition for a writ of habeas corpus in the district court, claiming that Duncan provided ineffective assistance of counsel on four different grounds. When the district court rejected all of his claims, this timely appeal followed.
 
 II.
 
 8
 Wheeler first claims that Duncan's failure to object to the admission of the civil consent decree rendered his assistance ineffective. We review claims of ineffective assistance of counsel, as well as the denial of a habeas corpus petition, de novo. Sanchez v. United States, 50 F.3d 1448, 1456 (9th Cir.1995) (ineffective assistance); Moran v. Godinez, 57 F.3d 690, 695 (9th Cir.1994), cert. denied sub nom. Moran v. McDaniel, 116 S.Ct. 479 (1995) (denial of habeas).
 
 
 9
 To prevail on a claim of ineffective assistance of counsel, a defendant must show "(1) that his counsel's performance was deficient and (2) that the ineffective assistance prejudiced the defense." Sanchez, 50 F.3d at 1456 (citation omitted); Strickland v. Washington, 466 U.S. 668, 687 (1984). Performance is judged from an "objective standard of reasonableness," evaluated "from the counsel's perspective at the time [of the alleged error]" so as to avoid "the distorting effects of hindsight." Strickland at 688-89. Because deficient performance encompasses only "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," id., 466 U.S. at 687, "the court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689 (emphasis added); Wade v. Calderon, 29 F.3d 1312, 1316 (9th Cir.1994), cert. denied, 115 S.Ct. 923 (1995) (noting strong presumption of competence). A defendant is not prejudiced by deficient performance unless "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694 (emphasis added).
 
 
 10
 Wheeler argues that Duncan's failure to object was objectively unreasonable because the consent decree was hearsay and because the Ninth Circuit had not yet decided whether the decree would be admissible in these circumstances under Federal Rule of Evidence 408.[2] The district court agreed with Wheeler. Due to the "highly prejudicial nature" of the decree and its questionable admissibility, we also find it unreasonable for an attorney not at least to object to its admission.
 
 
 11
 Wheeler contends that this deficiency prejudiced him, reasoning (1) that if Duncan had objected, the decree would not have been admitted; and (2) that if the decree had not been admitted, he would have been acquitted in light of the government's heavy reliance on the decree when proving guilt. The district court concluded that Wheeler's first proposition was incorrect since the decree was an not hearsay and since two of the three Circuits which had considered the admissibility of such decrees under Rule 408 would have admitted it. Wheeler contests this ruling and asks us to decide these evidentiary issues so as to establish prejudice.
 
 
 12
 Wheeler mounts a two-prong attack on the admissibility of the consent decree.[3] He first claims that he did not admit to the Findings of Fact contained in the consent decree and that these Findings cannot therefore be the admissions of a party opponent under Federal Rule of Evidence 801(d)(2). Fed.R.Evid. 801(d)(2). We agree. Both the Consent and Stipulation and the Final Judgment unequivocally state that Wheeler neither admitted nor denied the allegations in the SEC's complaint. Although Wheeler in the same documents also consented to the Findings of Fact (or to their entry), we cannot help but observe that the Findings were lifted almost verbatim from the SEC's complaint. We think it somewhat strange to say that a person who specifically neither admits nor denies the allegations of the complaint against him nevertheless admits the exact allegations in the form of a consent decree. It its stranger that the person does so in the selfsame document. We therefore believe that Wheeler did not admit to these Findings of Fact and that they are therefore inadmissible hearsay.
 
 
 13
 While we can thus agree with the first proposition Wheeler uses to establish prejudice--that Duncan's objection to the decree's admission would have resulted in its exclusion--we cannot agree with his second proposition that the decree's admission was prejudicial. We have reviewed the record below and find that the government elicited the same facts contained in the decree from its witnesses at trial. Because the same facts would have been before the jury even if the decree had been excluded, we find no "reasonable probability" that the result of this trial would have differed if Duncan had objected to the decree's admission. Wheeler's first ineffective assistance claim therefore fails.
 
 III.
 
 14
 Wheeler further claims that Duncan, had he cross-examined Wykidal, would have elicited two facts: (1) that Wykidal was inexperienced at preparing Registration statements; and (2) that Wheeler relied on Wykidal's advice as an attorney. These facts, Wheeler claims, would have developed his defense of reliance on counsel and would have dispelled the government's theory that Wheeler choose Wykidal because Wykidal was inexperienced.
 
 
 15
 The record does not support--and in fact undermines--Wheeler's claim. Both the government's attorney in direct examination, and Duncan in cross-examination, raised the issue of Wykidal's inexperience in securities law. Duncan also cross-examined Wykidal about Wheeler's reliance on Wykidal's advice. Duncan even argued this evidence in his closing argument in support of the good faith defense. Because Duncan actually asked the questions and elicited the facts Wheeler claims he did not, Duncan's performance was competent and Wheeler could not have been prejudiced by the absence of these facts.
 
 IV.
 
 16
 Wheeler next argues that Duncan should have called an expert witness to testify that a "blind pool" corporation is a legitimate type of corporation, which would have countered the government's assertion that such corporations were inherently "nefarious" and would have supported Wheeler's argument that it was permissible for such a corporation's officers to have little or no involvement in the corporation.
 
 
 17
 The failure to call an expert witness can be grounds for a successful ineffective assistance of counsel claim. In United States v. Tarricone, 996 F.2d 1414 (2d Cir.1993), the defendant's attorney never consulted a handwriting expert, who might have proven that the defendant never signed the "throughput agreement" at issue in the case. During the trial, the agreement was "important to the jury" and testimony that the defendant never signed the agreement would have cast doubt on the credibility of two other witnesses. The court held that the defendant had a "viable" claim of ineffective assistance warranting an evidentiary hearing, citing "the primary reason for our conclusion [as] the significance attached to the handwriting on the throughput agreement throughout the trial." Id. at 1419. Similarly, in Sims v. Livesay, 970 F.2d 1575 (6th Cir.1992), the defendant's attorney did not hire an expert to analyze the bullet holes and powder patterns on the quilt a homicide victim held in her hands at the time of her shooting; an expert's analysis would have revealed the distance between the gun and her body at the time of the shooting and might have supported the defendant's contention that the shooting was accidental. The court found his counsel ineffective. Id. at 1580-81.
 
 
 18
 Although these cases illustrate a claim like Wheeler's can be successful, it is not so on the facts of this case. Here, Duncan actually elicited the testimony Wheeler claims was missing from another witness, Wykidal. Wheeler is therefore left arguing that this same testimony should have come from a separate expert witness. This is untenable. Even if we assumed for the sake of argument that this proposition had merit, Wheeler's claim would still fail. Unlike the expert testimony in Tarricone and Livesay which would have addressed the very heart of the defendant's guilt in a case, the testimony about "blind pool" corporations in this case would be "background orientation" to corporate organization. Wheeler was not convicted for running a particular type of corporation--he was convicted of committing acts of nondisclosure; testimony about the former would seem to have little bearing on the latter. Thus, it is doubtful that such expert testimony would have altered the outcome of the proceeding and its absence was not therefore prejudicial.
 
 V.
 
 19
 Wheeler lastly argues that Duncan's assistance was ineffective because Duncan did not object at the sentencing hearing to the victim impact portion of the presentence report. Wheeler claims that the consent decree from the prior civil case established that no investor was harmed by his activities, so that the presentence report showing harm to victims was factually inaccurate and should have been challenged by Duncan.
 
 
 20
 Wheeler claims Duncan's performance was deficient because Duncan had a duty under ABA Standard for Criminal Justice Prosecution Function and Defense Function Standard 4-8.1(b) to "verify" and "challenge" information contained in a presentence report. However, it is well established that the ABA standards are only a "guide"--and are not dispositive of reasonable performance. Jeffries v. Blodgett, 5 F.3d 1180, 1198 (9th Cir.1993), cert. denied, 114 S.Ct. 1294 (1994) ("[T]he ABA Standards ... serve only as a 'guide' for determining whether an attorney's performance is adequate.") (citations omitted); Strickland, 466 U.S. at 688 ("Prevailing norms of practice as reflected in American Bar Association standards and the like ... are guides to determining what is reasonable, but they are only guides."). Moreover, Duncan submitted a written memorandum to the sentencing judge objecting to the victim impact section of the presentencing report; the sentencing judge assured Wheeler that he had considered this memorandum when imposing the sentence. Although at the hearing Duncan stated that the report contained no factual inaccuracies, Duncan maintained that restitution was inappropriate because no people were harmed by Wheeler's acts. While Duncan's concession of no inaccuracy may have been unwise, his memorandum and repeated efforts to interject the fact that no victims were harmed do not make his representation unreasonable.
 
 
 21
 Wheeler further asserts that the failure to object to the presentence report prejudiced him. He cites Spriggs v. Collins, 993 F.2d 85 (5th Cir.1993), which sets forth the Fifth Circuit's standard for evaluating "prejudice" at non-capital sentencing hearings: "[A] court must determine whether there is a reasonable probability that but for trial counsel's errors the defendant's non-capital sentence would have been significantly less harsh." Id. at 88. Under Spriggs, the court should consider: (1) the actual sentence imposed; (2) the minimum and maximum sentences available; (3) the relative placement of the defendant's sentence within the range of available sentences; and (4) mitigating and aggravating factors considered by the judge. Id. Under this test, Wheeler claims he has been prejudiced.
 
 
 22
 Wheeler's argument is without merit. To begin with, the Ninth Circuit has not adopted Spriggs and continues to use the regular Strickland test.[4] Under the regular Strickland standard, Wheeler did not suffer prejudice. Duncan submitted a memorandum to the court objecting to the factual inaccuracies, which the sentencing judge considered; Duncan's failure to object at the hearing, when he had already objected in the memorandum, would not have changed to outcome. Wheeler also stated in court that he agreed with Duncan that the presentence report contained no factual inaccuracies; although Wheeler now claims he was confused when he made this concession, the transcript makes this difficult to believe.
 
 
 23
 Wheeler's claim would fail even under the Spriggs analysis. Wheeler was sentenced to five years imprisonment, with all but six months suspended, and three years probation. The incarceration period ranged from no time to five years; the probation period ranged from one to five years. Given that Wheeler was incarcerated for almost the minimum, it seems unlikely his sentence would have been "significantly less harsh" if the one-page victim impact passage in the 15-page presentencing report had been accurate.
 
 
 24
 Because Duncan's performance was not deficient and because Wheeler suffered no prejudice under either the general Strickland or more specific Spriggs standards, this claim also fails.
 
 
 25
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Unless referred to specifically, the Final Judgment, the Consent and Stipulation, and Consent Decree will be hereafter referred to as the "consent decree."
 
 
 [2]
 Indeed, the Circuits that have decided the Rule 408 issue have split
 
 
 [3]
 Because we conclude that the decree is inadmissible hearsay, we need not address the second prong, Wheeler's claim that the decree is inadmissible under Rule 408
 
 
 [4]
 However, the Tenth Circuit has adopted Spriggs. See United States v. Kissick, 69 F.3d 1048, 1056 (10th Cir.1995). The Seventh Circuit employs a similar test, looking to whether the effect on the sentence was sufficiently large. See Durrive v. United States, 4 F.3d 548 (7th Cir.1993)