**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                            No. 95-6922

RICHARD R. MCCLEARY,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Walter E. Black, Senior District Judge.
(CR-90-425-B, CA-95-406-B)

Argued: March 3, 1997

Decided: May 1, 1997

Before WILLIAMS and MICHAEL, Circuit Judges, and
GOODWIN, United States District Judge for the
Southern District of West Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Christine M. Gregorski, Third Year Law Student, Appel-
late Litigation Clinic, UNIVERSITY OF VIRGINIA SCHOOL OF
LAW, Charlottesville, Virginia, for Appellant. Susan Moss Ringler,
Assistant United States Attorney, Baltimore, Maryland, for Appellee.
**ON BRIEF:** Neal L. Walters, Supervising Attorney, Jill T. Crawley,
Third Year Law Student, Appellate Litigation Clinic, UNIVERSITY

OF VIRGINIA SCHOOL OF LAW, Charlottesville, Virginia, for Appellant. Lynne A. Battaglia, United States Attorney, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

In 1991, Richard McCleary pleaded guilty to conspiracy to launder drug proceeds, see 18 U.S.C.A. § 371 (West Supp. 1997), and was sentenced to five years in prison. Almost four years later, McCleary filed a motion, pursuant to 28 U.S.C.A. § 2255 (West Supp. 1997), seeking to set aside his guilty plea and sentence. McCleary argues that the Government's presentation of perjured testimony and its failure to produce impeachment and exculpatory evidence materially affected his decision to plead guilty. We conclude, albeit for reasons different from those stated by the district court,[1] that McCleary cannot, as a matter of law, collaterally attack his guilty plea.

I.

On October 31, 1990, McCleary, a law school graduate, and his wife, Suzanne McCleary, were charged in a fifteen-count indictment with conspiracy to launder drug proceeds. See  18 U.S.C.A. § 371 (West Supp. 1997). McCleary was also charged with laundering drug proceeds, see 18 U.S.C.A. § 1956 (West Supp. 1997); structuring currency transactions, see 31 U.S.C.A. §§ 5324(a)(3) & 5322(a) (West Supp. 1997); failing to file currency transaction reports, see 31

_____

[1] **See Shafer v. Preston Memorial Hosp. Corp.**, 107 F.3d 274, 275 n.1 (4th Cir. 1997) (noting that "[w]e have consistently recognized that we may affirm a district court's decision on different grounds than those employed by the district court").

2

U.S.C.A. §§ 5316(a)(1)(A) (West 1983 & Supp. 1997) & 5322 (West Supp. 1997); and aiding and abetting, see 18 U.S.C.A. § 2 (West Supp. 1997). At his arraignment, McCleary entered a plea of not guilty on all counts. As a result, the case against McCleary proceeded to trial.

On May 21, 1991, Suzanne McCleary entered into a cooperation agreement with the Government in which she agreed to testify against her husband. The following day, McCleary's trial began. The Government's first three witnesses were Hans Pfennings, Donald Mackessy, and Archie Elliott. Both Elliott and Mackessy testified, pursuant to plea agreements, that they had purchased cocaine from McCleary between 1984 and 1988. Pfennings, who testified that he was not a paid agent of the United States Government, told the jury that McCleary frequently transferred money in and out of the off-shore trust accounts that Pfennings managed.

After the testimony of these three witnesses, and prior to the testimony of his wife, McCleary decided to enter into a plea agreement with the Government. Under the terms of the agreement, McCleary would plead guilty to one count of money laundering, and the Government would recommend a sentence at the low end of the Sentencing Guidelines range. Subsequent to the entry of McCleary's plea, the Government realized that the conduct in the count to which McCleary pleaded guilty occurred prior to the enactment of the Sentencing Guidelines. As a result, the Government advised McCleary and the court that it would file a motion to nullify or rescind the plea agreement.

After changing counsel, McCleary entered into a new plea agreement with the Government. Under the terms of the new agreement, McCleary would plead guilty to one count of conspiracy to launder drug proceeds, and the Government would recommend a maximum five-year sentence, to run consecutive to the 25-year state sentence McCleary was then serving for selling narcotics. At his rearraignment, McCleary withdrew his first guilty plea to money laundering and entered a second plea of guilty to conspiracy to launder drug proceeds. In addition, McCleary stipulated to and signed a Statement of Facts in which he admitted his involvement in (1) selling drugs; (2) laundering drug proceeds; (3) structuring currency transactions; and

3

(4) failing to file currency transaction reports. The district court accepted McCleary's plea and the Government's sentencing recommendation.

Almost four years after he was sentenced, McCleary filed a motion, pursuant to 28 U.S.C.A. § 2255 (West Supp. 1997), to vacate and set aside his guilty plea and sentence.**2** McCleary argues that the Government's presentation of perjured testimony and its failure to produce impeachment and exculpatory evidence materially affected his decision to plead guilty. Specifically, McCleary alleges that he has evidence (1) that Pfennings, who testified that he was not a paid agent of the United States Government, had actually been a paid federal agent for the DEA for six months prior to McCleary's trial; (2) that Special Agent Robert Twigg purchased prescription Valium for Elliott during at least one debriefing session; and (3) that the Government possessed tape recordings of exculpatory telephone conversations. Moreover, McCleary asserts that the prosecuting attorney knew, prior to his plea, that Pfennings perjured himself, that Elliott was addicted to Valium, and that exculpatory tape recordings existed.

The district court held, however, that McCleary's allegations of prosecutorial misconduct did not provide a basis for setting aside his guilty plea. The court reasoned that all of McCleary's allegations related to errors which occurred prior to his admitting in court that he was, in fact, guilty of the crime charged. (J.A. at 176-77 (citing Tollett v. Henderson, 411 U.S. 258, 267 (1973) (noting that a defendant may not "raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea")).) According to the district court, "[o]nce a criminal defendant has pled guilty, collateral review is limited to an examination of whether the plea was counseled and voluntary." (J.A. at 177 (citing United States v. Broce, 488 U.S. 563, 569 (1989)).) Based on this analysis, the district court held that McCleary could not, as a matter of law, collaterally attack his guilty plea. This appeal followed.

_____

**2** Because McCleary's sentence was to run consecutive to the state narcotics sentence he was serving at the time he entered his plea, he had not yet begun serving his five-year sentence when he filed his § 2255 motion.

4

II.

On appeal, McCleary contends that the district court erred when it held that his guilty plea barred collateral review of his claims of prosecutorial misconduct. Although McCleary agrees with the district court's conclusion that a voluntary guilty plea may not be collaterally attacked, see, e.g., United States v. Broce, 488 U.S. 563, 569 (1989); Mabry v. Johnson, 467 U.S. 504, 508 (1984); Tollett v. Henderson, 411 U.S. 258, 267 (1973), he argues that the district court never addressed his primary contention: The Government's failure to provide Brady evidence rendered his guilty plea involuntary. Whether a criminal defendant may collaterally attack his guilty plea based on a claimed Brady violation is a legal question that we review de novo. See United States v. Maybeck, 23 F.3d 888, 891 (4th Cir. 1994).

In Tollett, the Supreme Court explained that"a guilty plea represents a break in the chain of events which has preceded it in the criminal process." 411 U.S. at 258. As a result, "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Id. Instead, once a criminal defendant has pled guilty, collateral review is limited to an examination of "whether the underlying plea was both counseled and voluntary." Broce, 488 U.S. at 569.

Several circuits have held that a guilty plea may be deemed involuntary if entered into in the absence of withheld Brady evidence. See, e.g., Sanchez v. United States, 50 F.3d 1448, 1453 (9th Cir. 1995) (holding "that a defendant challenging the voluntariness of a guilty plea may assert a Brady claim"); Miller v. Anglicker, 848 F.2d 1312, 1320 (2d Cir. 1988) (holding that a guilty plea is not voluntary if "entered without knowledge of material information withheld by the prosecution"); White v. United States, 858 F.2d 416, 422 (8th Cir. 1988) (holding that the Tollett line of cases "does not preclude a collateral attack upon a guilty plea based on a claimed Brady violation, but habeas relief would clearly be the rare exception"); Campbell v. Marshall, 769 F.2d 314, 321 (6th Cir. 1985) (noting that under limited circumstances a guilty plea may be deemed involuntary if entered without knowledge of information withheld by the prosecution). If

5

this Court were to join our sister circuits, McCleary's ability to collaterally attack his guilty plea would turn on whether the Government actually withheld the alleged information and, if so, whether withholding that information violated Brady.

Because the district court did not conduct an evidentiary hearing to determine the truth of McCleary's factual allegations, it is impossible to determine from the record before us whether the Government actually withheld the alleged information. Cf. Sanchez, 50 F.3d at 1453 (holding that the Government did not possess and was not aware of the information allegedly withheld); Miller, 848 F.2d at 1321 (noting that "[t]here is no question in this case that the State withheld" information). Nevertheless, for purposes of this appeal we will assume without deciding that the prosecuting attorney knew, prior to McCleary's plea, that Pfennings perjured himself and that Elliott was addicted to Valium.**3** As a result, McCleary's ability to collaterally attack his guilty plea turns on whether withholding the aforementioned evidence violated Brady.

In Brady v. Maryland, 373 U.S. 83 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." Id. at 87. According to the Supreme Court, evidence is "material" if the failure to disclose it "undermines confidence in the outcome of the trial." United States v. Bagley, 473 U.S. 667, 678 (1985). As the definition of materiality suggests, the Supreme Court has never applied Brady, or its progeny,

_____

**3** McCleary also alleged that the Government failed to provide him with exculpatory tape recordings allegedly made by Special Agent Twigg. However, McCleary never identifies when these tapes were made, who is speaking on the tapes, or what exculpatory information the tapes contain. We have previously held that "[u]nsupported, conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing." Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992) (conclusory statement that discrimination occurred in selecting the jury was not enough). Because McCleary simply made the conclusory statement that the Government possessed exculpatory tapes, he was not entitled to an evidentiary hearing on this allegation. As a result, we will not assume that the prosecuting attorney knew, prior to McCleary's plea, that exculpatory tape recordings existed.

6

to a guilty plea. In the case of a guilty plea, our sister circuits have concluded that information is "material" if it "would have been controlling in the decision whether to plead." White 858 F.2d at 424; see also Campbell, 769 F.2d at 324 (same); cf. Sanchez, 50 F.3d at 1454 (holding that information is material if "there is a reasonable probability that but for the failure to disclose the Brady material, the defendant would have refused to plead and would have gone to trial"); Miller, 848 F.2d at 1322 (same).

After reviewing the record, briefs, and pertinent caselaw, and after hearing oral arguments, we are convinced that none of the allegedly undisclosed information would have altered McCleary's decision to plead guilty. First, we find no merit in McCleary's argument that he would have proceeded to trial had he known that Elliott was addicted to Valium. The fact that Elliott was addicted to Valium was relevant only to his credibility as a witness. McCleary, however, already knew that Elliott's credibility had been assailed at the time he entered his plea of guilty. Elliott admitted at trial that he was a convicted felon and drug dealer, that he failed to file income tax returns, and that he was testifying as a part of a plea agreement with the Government. Knowledge of Elliott's addiction could not have further lessened his credibility with the jury. In short, we conclude that McCleary did not plead guilty because he was unable to attack Elliott's credibility as a witness.

Even if the undisclosed information was essential to a successful attack on Elliott's credibility, Elliott was not the only witness who testified, or was going to testify, about McCleary's participation in selling narcotics. Donald Mackessy testified that in October of 1984 he entered into "a partnership or a joint venture" with McCleary to buy and sell cocaine. (S.J.A. at 68.) According to Mackessy, McCleary would purchase the cocaine in Florida and then send it via Federal Express to Mackessy in Maryland. In Maryland, Mackessy and McCleary cut and packaged the cocaine for further distribution. Over time, the joint venture flourished. As a result, Mackessy testified that McCleary started dealing in kilo quantities and using couriers to bring the cocaine from Florida to Maryland. Even more telling, McCleary knew that his wife, who had already admitted her role in the offense, had agreed to testify about his narcotics activities. As a result, we cannot say that withholding information about Elliott's

7

Valium addiction, which McCleary could have used only to attack Elliott's credibility as a witness, was controlling in McCleary's decision to plead guilty.

Similarly, we find no merit in McCleary's argument that he would have elected to go to trial had he known that Pfennings was a paid agent of the United States Government. Even if McCleary successfully impeached Pfennings' credibility by establishing that he committed perjury, the substance of Pfennings' testimony was corroborated by two independent sources. First, the Government had McCleary's business records, which documented all of his illegal financial transactions. Even more important, Suzanne McCleary was prepared to testify that McCleary frequently transferred money in and out of the off-shore trust accounts managed by Pfennings. As a result, we conclude that withholding information about Pfennings' status as a paid agent of the United States Government did not control McCleary's decision to plead guilty.

We note that McCleary benefited greatly from pleading guilty. McCleary was charged in a fifteen-count indictment. If convicted on all counts, McCleary could have received a maximum of 250 years in prison.**4** As a result of pleading guilty, McCleary received a maximum sentence of 5 years. Although the benefit McCleary received by pleading guilty is not determinative, it certainly does not undermine our conclusion that had the Government provided McCleary with the evidence in question, he would still have pleaded guilty.

In light of the Government's strong case and the prospect of a lengthy sentence if convicted, we do not believe that there is a reason-

_____

**4** Although combining the statutory maximum for each count in the indictment would result in a 250-year sentence, this Court does not have enough information to determine what McCleary's sentence would have been had he been convicted on all counts. Besides the fact that some of the counts in the indictment related to conduct that occurred prior to the enactment of the Sentencing Guidelines, it is not at all clear what his combined offense level would be for those counts covered by the Sentencing Guidelines. In any event, whatever his sentence would have been, it would have been significantly longer than the five-year sentence he received as a result of the plea agreement.

able probability that McCleary, who was already serving a 25-year state sentence, would have proceeded to trial in this case. Because we find that the information was not material, withholding it did not violate Brady. As a result, we need not, and do not, determine whether a criminal defendant can collaterally attack a guilty plea based on an alleged Brady violation. That determination we leave for another day.

III.

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED